## BUDWIT *v.* HERR.

1. INSURANCE—HUSBAND AND WIFE—MURDER.

    Man who murdered his wife is not entitled to proceeds of insurance policy in which he had been named beneficiary.

2. DESCENT AND DISTRIBUTION—DEATH OF INTESTATE FROM FELONY OF CLAIMANT.

    The statutes of this State relating to the descent and distribution of property of persons dying intestate do not specifically refer to a situation where the death of the intestate has resulted from the felonious act of a person claiming the property (CL 1948, §§ 702.80, 702.93).

3. HOMICIDE—DESCENT AND DISTRIBUTION—PUBLIC POLICY.

    To permit a person who commits a murder, or any person claiming under him, to benefit by his criminal act through succession to property would be contrary to public policy.

REFERENCES FOR POINTS IN HEADNOTES
[1] 29 Am Jur, Insurance § 1310.
[1] Murder or killing of insured by beneficiary or by a third person who procures the policy as affecting life insurance or its proceeds.  70 ALR 1539; 91 ALR 1486.
[2, 3, 5] 16 Am Jur, Descent and Distribution §§ 74, 107.
[4] 16 Am Jur, Descent and Distribution § 78.
[6] 16 Am Jur, Descent and Distribution § 18.
[7] 26 Am Jur, Husband and Wife § 83.
[7] Felonious killing of one cotenant or tenant by the entireties, by the other as affecting latter's rights in the property.  32 ALR2d 1099.
[8] 14 Am Jur, Costs § 10.

4. Descent and Distribution—Murder—Common Law—Constitutional Law.

> The rule of law that a common-law right to succession of property does not operate in favor of one who wilfully takes the life of an ancestor does not contravene a constitutional provision that a conviction of crime shall not work a forfeiture of the estate (US Const, art 1, § 9[3]; Mich Const 1908, art 2, § 9).

5. Same—Murder—Statutes.

> One who feloniously takes the life of another is not entitled under the statutes of descent and distribution to inherit or receive any part or portion of the property in the estate of such deceased, either as an heir or as distributee, since one may not be permitted to profit by his criminal act (CL 1948, §§ 702.80, 702.93).

6. Same—Statutes—Common Law.

> The statutes relating to the descent and distribution of property of persons dying intestate have not pre-empted the field to the exclusion of common-law principles (CL 1948, § 702.80 et seq.; § 702.93 et seq.).

7. Husband and Wife—Estates by Entireties—Murder—Equally Divided Court.

> Provision of decree holding that husband who had murdered his wife was entitled to an undivided half interest in the property they had theretofore held as tenants by the entireties is affirmed by an equally divided court.

8. Costs—Failure to Sustain Claim on Appeal.

> No costs are allowed in suit for determination of rights of inheritance and survivorship in property in which neither party has sustained claims advanced on respective appeals.

Appeal from Macomb; Noe (Alton H.), J. Submitted January 12, 1954. (Docket No. 58, Calendar No. 45,799.) Decided April 5, 1954.

Harold Bauman murdered his wife, Veda Bauman. Bill by Joseph Budwit and Vera Budwit, the wife's parents, against Erna Herr, Emma Bauman and Harold Bauman to determine rights of inheritance and survivorship. Decree that proceeds of insurance policy and wife's personal estate were distributable

to her heirs, exclusive of husband, and that the entireties property be owned and held by the husband and the wife's estate as tenants in common. Defendants Bauman appeal. Plaintiffs cross-appeal. Decree affirmed as to insurance and wife's estate. Affirmed by equally divided court as to disposition of entireties property.

*James C. Daner,* for plaintiffs.

*Macy E. Watkins* and *Neal & Hirt,* for defendants.

Carr, J. (*for affirmance.*)  On June 26, 1948, the defendant Harold Bauman shot and killed his wife Veda.  On trial he was convicted by the jury of second-degree murder and was sentenced to life imprisonment.  The conviction and sentence were affirmed by this Court in *People* v. *Bauman,* 332 Mich 198, wherein the facts attending the commission of the offense are set forth.

At the time of her death Veda Bauman was the owner of a beauty shop business in the city of Mt. Clemens and of an insurance policy in the sum of $1,000 issued by the Prudential Insurance Company of America, in which Harold Bauman was named as the beneficiary.  She and her husband were also the owners, as tenants by the entireties, of real property. Following her death the defendant Erma Herr was appointed administratrix of her estate.  The total net value of the personal property owned by Veda Bauman is approximately $1,500, and the value of the entireties property, including an equity in a land contract, is approximately $2,000.  Under power of attorney, the defendant Emma Bauman, the mother of Harold, was, immediately prior to the bringing of the instant suit, collecting the rent falling due under leases of the real estate, it being her

claim and that of her son that the latter was then the sole owner of such property.

Veda Bauman left no children surviving her. Plaintiffs herein brought the instant suit as her parents and next of kin for the primary purpose of obtaining a determination as to the rights of Harold Bauman in the insurance policy, the personalty referred to, and the real estate. They sought injunctive relief against defendant Emma Bauman to restrain her from continuing to collect rentals under the power of attorney, and against defendant administratrix to prevent her from turning over to Harold Bauman any part or portion of the estate of his wife. A temporary injunction was granted, and the court appointed defendant Emma Bauman as the agent of the court for the purpose of collecting the rentals in question, and maintaining the property including payments on the land contract. It was further ordered that she account when so required by the court for all moneys coming into her possession.

The case was tried in the circuit court on a stipulation of facts and a statement of the issues involved, such issues relating to the disposition of the proceeds of the insurance policy, the determination whether Harold Bauman, having murdered his wife, was barred from taking any part or portion of her property under the statutes of the State pertaining to the descent and distribution of the estates of deceased persons,* and the nature and extent of his interest in the real estate that he and his wife had owned as tenants by the entireties. It was conceded in the stipulation that the murder was not committed by Harold Bauman for the express purpose of obtaining the property of his wife. The trial court concluded that because of the fact that Harold Bauman had murdered his wife he was not entitled

---

* See CL 1948, §§ 702.80, 702.93 (Stat Ann 1943 Rev §§ 27.3178 [150], 27.3178[163]).—REPORTER.

to the proceeds of the insurance policy or to share in the distribution of the personal property in her estate. It was further determined and decreed that the plaintiffs, as heirs of their daughter, are the owners, as tenants in common, of an undivided one-half interest in the real property in question, defendant Harold Bauman taking the other half interest.

From the decree entered defendants have appealed, claiming that the trial court was in error in holding that Harold Bauman was barred from taking any distributive share in the estate of Veda Bauman and that he was entitled only to a half interest in the real property that had been owned by the spouses as tenants by the entireties. Plaintiffs have cross-appealed, contending that the entire interest in the real estate should be granted to them as heirs of their daughter. The defendant administratrix did not file an answer to the bill of complaint, nor has she joined in either appeal.

The provision of the trial court's decree with reference to the proceeds of the insurance policy is not in question. A similar situation was involved in *Ohio State Life Ins. Co.* v. *Barron,* 274 Mich 22, in which it was held that the beneficiary under a policy of life insurance who has feloniously caused the death of the insured may not recover thereon. In reaching such conclusion this Court determined from the record that the killer, who subsequently committed suicide, was not insane and that under the generally accepted rule his estate was not entitled to the proceeds of the policy, citing *New York Mutual Life Ins. Co.* v. *Armstrong,* 117 US 591 (6 S Ct 877, 29 L ed 997). A like determination was reached in *Slocum* v. *Metropolitan Life Ins. Co.,* 245 Mass 565 (139 NE 816, 27 ALR 1517, 1521).

Is defendant Harold Bauman barred because of his criminal act from taking any distributive share of the personal property in the estate of Veda

Bauman? The statutes of the State relating to the distribution and descent of property of persons dying intestate do not specifically refer to a situation of this nature. In *Garwols* v. *Bankers Trust Co.*, 251 Mich 420, a son murdered his mother in order that he might inherit her property. It was urged in his behalf that the matter of descent and distribution of estates was governed wholly by statute, and that the rule of the common law could not be invoked to bar him from taking as an heir and distributee. This Court rejected the claim, holding that the statutes should not be construed as applying to a special situation of the character then before it, and that it might be assumed that the legislature intended such a case to be subject to the rules of the common law. It was recognized that decisions on the subject were not in harmony. The majority of the Court limited the holding to the precise question involved, that is, whether an heir who murders his ancestor for the purpose of obtaining property may inherit, or take by way of distribution, concluding that for reasons based on equity and public policy he should not be permitted to do so. It may be noted that 3 members of the Court, concurring in the result, joined in an opinion suggesting that the rule should be stated in broader terms than in the majority opinion, and should apply in all cases involving the right to take of one intentionally and feloniously causing the death of the person from whom the inheritance, devise or bequest would come.

It is significant that in the *Garwols Case* the majority opinion quoted with approval from Wharton on Homicide (3d ed), § 665, as follows:

" 'To permit a person who commits a murder, or any person claiming under him, to benefit by his criminal act, would be contrary to public policy. And no devisee can take under the will of a testator whose death has been caused by the criminal and

felonious act of the devisee himself. And in applying this rule, no distinction can be made between a death caused by murder and one caused by manslaughter. Nor does the common-law right of succession by descent operate in favor of one who wilfully takes the life of his ancestor for the purpose of succeeding to his property rights. And the common-law right of a man to succeed to the property of his wife upon her death does not operate in favor of one who murders his wife. And the rule that the common-law doctrine of succession to property does not operate in favor of one who wilfully takes the life of his ancestor should apply against any person claiming through or under the slayer. Nor does a rule of law that a common-law right of succession to property does not operate in favor of one who wilfully takes the life of his ancestor contravene a constitutional provision* that a conviction of crime shall not work a forfeiture of the estate.' "

The Court also cited *Slocum* v. *Metropolitan Life Ins. Co., supra.* The Massachusetts court there held that the proceeds of the insurance policy in question should be paid to the administrator of the estate of the deceased and that the husband, who feloniously took the life of the insured, would not be entitled to any part or portion thereof that might be left after the payment of debts and the expenses of administration. In reaching such conclusion it was said (p 570):

"The same principle of public policy which precludes him from claiming directly under the insurance contract, equally precludes him from claiming under the statute of descent and distribution." (Citing cases.)

It may be noted that this language was quoted with approval in the *Garwols Case* (p 431).

---

\* See US Const, art 1, § 9(3); Mich Const 1908, art 2, § 9.—
REPORTER.

While the specific question at issue has not been previously passed on by this Court, we think that the applicable rule is that one who feloniously takes the life of another is not entitled under the statutes of descent and distribution of this State to inherit or receive any part or portion of the property in the estate of such deceased, either as an heir or as distributee. Such rule is consistent with the opinions in the cases above cited. Under accepted principles of public policy, equity and justice, one may not be permitted to profit by his criminal act. The trial judge so held in the instant case, and we are in accord with his conclusion.

This brings us to a consideration of the status of the property owned by Veda and Harold Bauman as tenants by the entireties. The incidents of such an estate have been repeatedly considered and discussed by this Court and by other courts throughout the country. In 41 CJS, p 457, it is said:

"An estate by entirety is sometimes regarded as a species of, or modified form of, joint tenancy, the modification being rendered necessary by the common-law theory that husband and wife are but one person. The unities of time, title, interest, and possession are common to both estates but in an estate by entirety there is an additional unity, namely, that of person. Strictly speaking, a tenancy by entirety is not a joint tenancy but is a sole tenancy, and, while the 2 estates resemble each other and possess some qualities in common, yet they differ both in form and substance and are distinguishable."

In *Sanford* v. *Bertrau,* 204 Mich 244, the question at issue was the right of a creditor obtaining a judgment against husband and wife to levy a writ of execution on property owned by them as tenants by the entireties. It was contended by the plaintiffs, who brought the action to remove a cloud on their title created by the service of the writ, that each of

them held an interest in the estate similar in some respects to a contingent remainder. In rejecting the claim, it was said (p 248):

"We think the better doctrine is that the right of survivorship is merely an incident of an estate by entirety, and does not constitute a remainder, either vested or contingent. *Davis* v. *Clark,* 26 Ind 424 (89 Am Dec 471); *Shinn* v. *Shinn,* 42 Kan 1 (21 P 813, 4 LRA 224)."

Likewise, in *Hoyt* v. *Winstanley,* 221 Mich 515, in discussing the nature of the tenancy, it was declared that (p 518):

"It is an estate in joint tenancy plus the unity of the marital relation. At common law and in our statutes, estates by the entirety are regarded as a modified form of joint tenancy."

See, also, *Nurmi* v. *Beardsley,* 275 Mich 328; *Long* v. *Earle,* 277 Mich 505; *Pray* v. *Stebbins,* 141 Mass 219 (4 NE 824).

In some States tenancy by the entireties as known to the common law is not recognized. In Michigan, as the above decisions and others of similar import clearly show, it differs from ordinary joint tenancy in that the marital relation is an essential incident. Under the statute (CL 1948, § 552.102 [Stat Ann § 25.132]) in the event that a husband and wife who are the owners of such an estate are divorced they become tenants in common of the property, except as the court may make other disposition of it. Obviously, if the theoretic unity of the spouses is destroyed, in other words if the marital relation is terminated, the estate by the entireties may not continue as such. In the instant case the marital unity was destroyed by the criminal act of defendant Harold Bauman. In view of such fact, is he entitled to claim that the entire estate vested in him following the death of his wife?

Counsel for the respective parties have cited in their briefs numerous decisions from other States, based on divergent theories and conclusions which cannot possibly be reconciled. In *Beddingfield* v. *Estill,* 118 Tenn 39 (100 SW 108, 9 LRA NS 640), it was held that a husband who had murdered his wife became the sole owner of property that they had held as tenants by the entireties, the theory being that he had by her death acquired no new interest of any kind or character but that his estate continued by virtue of the fact that he was the survivor. The court adhered to the rule recognized in prior Tennessee cases that under a tenancy by the entireties the spouses constituted a single legal person without separate or separable interests. Apparently the court did not consider the bearing of the fact that the marital relation, an essential incident of the estate, was destroyed by the felonious act of the husband in murdering his wife, nor the situation resulting from such destruction of the marital unity. It was also held that a statute of the State declaring that any person feloniously killing or conspiring to kill another may not inherit property from the deceased person, but should forfeit all right and interest thereto, did not apply. The decision must be regarded as applying a technical legal view as to the nature of the estate.

Of similar import is *Smith* v. *Greenburg,* 121 Colo 417 (218 P2d 514), the court taking the position that the matter at issue was for the determination of the legislature, that the statutes of the State had pre-empted the field, and that the public policy of the State had been fixed accordingly. It may be noted that the ruling of the court in favor of the administrator of the estate of the husband who, it appears, had murdered his wife and adopted daughter and then committed suicide, applied to property held in tenancy in common, and also to

property held in joint tenancy. It does not appear that an estate by the entireties, as recognized by the common law, was involved.

In *Wenker* v. *Landon,* 161 Or 265 (88 P2d 971), the court cited with approval *Beddingfield* v. *Estill, supra,* and held that a statute of the State preventing an heir or beneficiary who feloniously causes the death of another from taking any portion of the estate of such other did not apply to a tenancy by the entireties. It was recognized, however, that the surviving spouse does receive a benefit in an estate held by the entireties upon the death of the other spouse, becoming the sole owner of the property with the right to dispose of it as he sees fit. The court rejected the claim that under common-law principles the husband who had, it is claimed, feloniously murdered his wife was not entitled to the absolute ownership of the property that the spouses had held as tenants by the entireties. Decisions from other States supporting such claim were cited, the court pointing out that they recognized different theories and refusing to follow any one of them. It was declared that any change in established rules relating to tenancy by the entireties was within the province of the legislature and not of the courts.

Among other decisions cited by the Oregon court in the *Wenker Case, supra,* was *Bryant* v. *Bryant,* 193 NC 372 (137 SE 188, 51 ALR 1100). There the heirs-at-law of Ida Bryant, who had been murdered by her husband, brought suit to enjoin the defendant, their father, from undertaking to convey land that he and his wife prior to her death had held as tenants by the entireties. Citing prior decisions in different States on both sides of the issue, the court came to the conclusion that under its equitable jurisdiction it should decree that the defendant held the estate for his lifetime in trust for the heirs of the murdered wife, subject to his right of management and to his

right to the rents and profits for his life. In discussing the equitable principle, it was said (p 378):

"If the doctrine is applicable, how does it affect the appellant's title? The answer depends upon the nature of an estate by entireties. In such case by a legal fiction the husband and wife hold the title as one person. Whenever the fictitious unity of person is severed by the death of either the survivor has the title, the deceased leaving no interest which is descendible or devisable. During its continuance neither the husband nor the wife can convey or encumber the estate so as to destroy the right of the survivor, but the husband has the control and use of the property and is entitled to the possession, income, and usufruct thereof during their joint lives. *Bruce v. Nicholson,* 109 NC 202 (13 SE 790, 26 Am St Rep 562); *Bank of Glade Spring v. McEwen,* 160 NC 414 (76 SE 222, Ann Cas 1914C, 542); *Dorsey v. Kirkland,* 177 NC 520 (99 SE 407); *Davis v. Bass,* 188 NC 200 (124 SE 566). It is therefore manifest that if the deceased wife were now living the appellant could not be deprived of his interest in the estate by an arbitrary judgment of the court. Nonetheless is he entitled to the enjoyment of such interest after her death; but for the benefit of her heirs-at-law a court of equity will interpose its protecting shield. This principle is illustrated by Ames (Lectures on Legal History), *supra,* 321: 'Similar reasoning would be applicable if land bought by B and C had been conveyed to them as joint tenants in fee simple, and C were then to murder B. Each joint tenant has a vested interest in a moiety of the land so long as he lives, and a contingent right to the whole upon surviving his fellow. The vested interest of C, the murderer, cannot be taken from him even by a court of equity. But C having by his crime taken away B's vested interest must hold that as a constructive trustee for the heir of B.'

"In the application of this principle a court of equity will not deprive the appellant of his interest

in the estate, but the appellant by his crime took away his wife's interest, and as to this he must be held a constructive trustee for the benefit of her heirs, the judge in effect having found as a fact that the deceased would have survived him. Even in the absence of such finding, equity would probably give the victim's representatives the benefit of the doubt. Ames, *supra,* 321.

"Our conclusion is that the appellant holds the interest of his deceased wife in the property as a trustee for her heirs-at-law; that he should be perpetually enjoined from conveying the property in fee; that the plaintiffs should be adjudged the sole owners, upon the appellant's death, of the entire property as the heirs of their deceased mother; and that the judgment as thus modified should be affirmed."

The supreme court of Wisconsin, on similar facts, came to a somewhat analogous conclusion in *Estate of King,* 261 Wis 266 (52 NW2d 885). There the property in question was held in joint tenancy by a husband and wife. The latter was murdered by her husband, who immediately committed suicide. Both parties died intestate. In a contest between the administrators of the 2 estates the conclusion was reached that the ownership of the property never vested in the husband because the joint tenancy became inoperative at the instant of the wife's death. In discussing the alleged issue of attainder it was said (p 273):

"We conclude that immediately before the murder Mr. King's joint estate in the real and personal property gave him the right to enjoy it equally with his wife during his lifetime. That enjoyment must be preserved but it cannot be enlarged by his unlawful act. Consequently, consistent with our decision in the *Wilkins Case, supra (Estate of Wilkins,* 192 Wis 111 [211 NW 652, 51 ALR 1106]), his right to have an estate of inheritance upon the death of his

cotenant became inoperative at the moment of the death which he caused and prevented the taking by King and the vesting in him of the enlarged estate. He retained what he had before but gained nothing in addition. That which he already had,—enjoyment of the property equally with his wife during her lifetime,—ended when he died. Mrs. King's rights could not be taken from her by unlawful means. One of such rights was her right to take all the property as surviving joint tenant except as her prior death without her husband's intervention might prevent. No such death occurred or can occur. The right which each joint tenant has to acquire the whole estate by outliving his cotenant is subject to the qualification that the joint tenancy has not been terminated during the lifetime of the parties. Such previous severance of the tenancy may be accomplished in various ways. The parties may end it by mutual agreement; either party may convey his interest, whereupon his grantee becomes a tenant in common with the nonconveying tenant; or the joint tenancy may be severed by court action, as by a partition sale or a sale upon execution of a judgment. We decline to add murder of a cotenant to the approved methods by which one joint tenant may convert the joint tenancy of the other into some different interest, thereby, himself, acquiring an estate which he did not have before his crime.

"Since Mr. King could not deprive Mrs. King of her right to hold as joint tenant by his illegal act, the right must be considered to remain in existence and to become operative when Mr. King died. Though Mrs. King died, under these circumstances her status as joint tenant continued in her administrator and heirs-at-law; and when her husband died and his life interest in the property ended, her joint tenancy became her estate of inheritance in the entire property. King had nothing for his administrator and heirs-at-law to take. Mrs. King's administrator takes her personal property and her heirs-at-

law her realty, as the learned trial court determined."

Three members of the court dissented, expressing their belief that the fee should be divided, the husband retaining one-half as if the parties had been divorced. In support of such conclusion it was said (p 274):

"We believe that the last-mentioned result is the most equitable and can be justified upon the theory that the murder operates as a severance of the joint tenancy resulting in a tenancy in common whereby the murderer retains ownership to an undivided one-half interest, but gains no title in, or enjoyment of, the other half, which other half vests in the heirs-at-law and next of kin of the murdered joint tenant."

In *Hogan* v. *Martin* (Fla 1951), 52 So2d 806, it was held that a husband who had murdered his wife succeeded to only one-half of the estate that had been held in entirety with her. Referring to prior decisions involving different facts, it was said:

"This case is differentiated because here Rollins, by his own wrongful act, severed the marital status thereby removing the only foundation upon which to base a tenancy by entirety. We have held that where a husband and wife are divorced and own property by the entireties they become tenants in common. *Markland* v. *Markland,* 155 Fla 629 (21 So2d 145)."

Among other recent decisions relating to the question is *Grose* v. *Holland,* 357 Mo 874 (211 SW2d 464). The facts there were very similar to those in the case at bar. One William E. Holland was convicted of murdering his wife and was given a life sentence. Prior to the death of Mrs. Holland the two had held real estate as tenants by the entireties. Through a trustee he took possession of the real estate and proceeded to collect the rents and benefits therefrom, claiming sole and complete owner-

ship.   The plaintiffs were the heirs-at-law of Mrs.
Holland and brought suit to recover as such heirs
one-half of the property.   The trial court dismissed
the petition, but the supreme court of the State re-
versed, sustaining plaintiffs' claims, citing *Perry*
v. *Strawbridge,* 209 Mo 621 (108 SW 641, 16 LRA NS
244), and *Barnett* v. *Couey,* 224 Mo App 913 (27 SW
2d 757).   The court rejected the contention that the
conclusion reached worked a forfeiture of any prop-
erty rights, possessed by William E. Holland, in vio-
lation of provisions of the State constitution, such
claim being based on the theory that on the death of
the wife Holland remained as sole owner, that he ac-
quired no new or additional interest because of her
death, and that he held the entire title in his individ-
ual right because such was the nature of the estate
under the original grant.   A prior decision of the
Missouri court relied on in support of the contention
was construed as holding that during the life of the
spouses the title was vested in the union created by
the marriage.   In support of the conclusion that the
husband was entitled to one-half the estate as a
tenant in common, and the heirs of the wife were
entitled to one-half, it was said in part (p 880):

"We have already seen that during the time the
marriage relation exists that each spouse has a sep-
arate interest in the estate by the entirety that can
be protected by a court of equity.   *Holmes* v. *Kansas
City,* 209 Mo 513 (108 SW 9).   And upon an absolute
divorce, the estate by the entirety becomes an estate
in common.

"The husband does acquire an additional interest
through the death of his wife.   When her death
occurs, he then becomes the sole owner of the estate.
Prior to the wife's death the husband must share the
current profits with his wife.   But after her death
the husband does not share these profits and has no
possibility of loss of his interest impending over him.

"Other States have ruled both ways on the question before us. But we think the sound reasoning under the record of this case is that the surviving husband never acquired the whole estate in the property described in appellants' petitions and, therefore, there was nothing upon which the constitutional provision and statute could operate."

Without discussing other decisions relating to the matter we conclude that the trend of authority supports the doctrine of the Florida and Missouri cases cited. As before noted, defendant Harold Bauman destroyed the marital union by his unlawful act. An essential incident of the estate by the entireties was gone. He did not, in consequence, become seized of the entire estate in his individual right. Prior to his crime he and Veda Bauman had owned it as one person. This Court in the *Garwols Case, supra,* rejected the theory that the legislature in the enactment of the statutes relating to the descent and distribution of property of persons dying intestate had pre-empted the field to the exclusion of common-law principles. Certainly Harold Bauman should not be permitted to profit as a result of his wrongful and criminal conduct. Granting to him an undivided one-half interest in the property as a tenant in common gives to him everything to which he is entitled under the situation disclosed by the record, and such result is consistent with the reasoning of this Court in the *Garwols Case, supra.* This disposition of the matter does not result in depriving him of property rights in violation of any provision of the State constitution or of the Federal Constitution. There is no forfeiture of any estate in real property title to which became vested in him in his individual right.

The decree of the trial court is affirmed. No costs are allowed, plaintiffs and defendants alike having

failed to sustain the claims advanced by them on their respective appeals.

Butzel, C. J., and Bushnell and Kelley, JJ., concurred with Carr, J.

Dethmers, J. (*for modification in part*). I am in accord with Mr. Justice Carr's opinion as it relates to life insurance proceeds and personal property, but do not concur in affirmance of the trial court's disposition of real property owned by the entireties.

Cited are authorities that a tenancy by the entireties is not a joint but a sole tenancy, predicated on theoretic unity of the spouses. It is to be noted further, under Michigan decisions, that such tenancy implies a seisin *per tout et non per my,* that is to say, each spouse owns the whole, not a moiety or undivided half, and neither can transfer or affect the title alone or alien it without the other, as distinguished from a joint tenancy in which one owner may alien his share. *In re Appeal of Nellie Lewis,* 85 Mich 340 (24 Am St Rep 94); *Way* v. *Root,* 174 Mich 418; see discussion and citations therein. The meaning of the Michigan cases is that, as of the instant when title by the entireties comes to the spouses, each is vested with the entirety, with ownership of the whole, and with right of survivorship. Those interests and rights become fixed immediately upon vesting of title in them. On a like state of the law in Tennessee, the court, in *Beddingfield* v. *Estill,* 118 Tenn 39 (100 SW 108, 9 LRA NS 640), aptly said, by quoting with approval, the following (pp 46–48):

"The estate of a husband and wife is a unit, not made up of any divisible parts subsisting in different natural persons, but an indivisible whole, vested in 2 persons who are actually distinct, yet who, ac-

cording to legal intendment, are one and the same. On the death of husband or wife, the survivor take no new estate or interest—nothing that was not in him or her before. It is a mere change in the properties of the legal person holding—not of the legal estate holden.   *   *   *

"In the last case (an estate by entirety), although there are 2 natural persons, they are but 1 person in law, and upon the death of either the survivor takes no new estate. It is a mere change in the properties of the legal person holding, and not an alteration in the estate holden. The loss of an adjunct merely reduces the legal personage holding the estate to an individuality identical with the natural person. The whole estate continues in the survivor, the same as it would continue in a corporation after the death of one of the corporators. This has been the settled law for centuries.   *   *   *

"Survivor took the estate, not by right of survivorship simply, but by virtue of the grant, which vested the entire estate in each grantee."

The court also said (p 49):

"It was a vested estate, which upon the death of his wife, although caused by his felonious act, he continued to hold in fee simple under said deeds, and to no extent from or through his wife."

Other cases tending to support the husband's position at bar, in addition to *Beddingfield*, are *Oleff* v. *Hodapp*, 129 Ohio St 432 (195 NE 838, 98 ALR 764); *Welsh* v. *James*, 408 Ill 18 (95 NE2d 872); *Smith* v. *Greenberg*, 121 Colo 417 (218 P2d 514); *Wenker* v. *Landon*, 161 Or 265 (88 P2d 971).

I am not insensible to the feeling, nor unappreciative of the common-law principle, that one ought not to benefit by his criminal act. Such, indeed, is the principle to which this Court adhered in *Garwols* v. *Bankers Trust Co.*, 251 Mich 420. I cannot agree, however, that the reasoning in *Garwols* supports a

conclusion that the husband's vested interest in the entirety and in right of survivorship may, because of his crime, be taken from him by the court and some other or different interest, namely, an undivided half interest as a tenant in common, be substituted therefor and given to him, or that such course would not constitute a forfeiture of an estate in real property or "result in depriving him of property rights in violation of  *  *  *  the State  *  *  * or  *  *  *  Federal Constitution." For in *Garwols* itself, after giving expression to the principle that one ought not to profit from his own crime, this Court made a significant observation which points up the distinction between that case and this, saying (p 428):

"It is insisted that 'under our law, there is no longer corruption of blood or forfeiture of estates for conviction of crime.' But there is a clear distinction between divesting of property and denying one's right to inherit."

That distinction is controlling here. In *Garwols* the murderer did not own or have any vested interest in the property in question. When he murdered his ancestor he had only the hope of inheriting it. The court's denial thereof deprived him of no vested interest or property right. To have permitted him to inherit would have resulted in his taking something by his crime which was not his before its commission. In the instant case ownership of the whole of the property and of the right of survivorship vested in the husband before the murder occurred, when title was acquired by the spouses, according to the cited Michigan cases. For these reasons I am, also, unable to agree with Mr. Justice CARR that the controlling question in this case is whether the husband is "entitled to claim that the entire estate vested in him following the death of the wife." That

vesting had already occurred before her death. The death of the wife resulted, to quote *Beddingfield,* in "a mere change in the properties of the legal person holding—not of the legal estate holden." In legal contemplation the survivor takes nothing from the deceased, having had ownership of the whole from the beginning. 3 Bogert, Trusts and Trustees, § 478. Would not the taking from the husband of that vested and continuing interest in him, as punishment for or because of his crime, fall, rather, within the meaning of what the above quotation from *Garwols* appears to recognize and concede to be a "forfeiture of estates for conviction of crime"? Pertinent to that question is the language of the Tennessee court in *Beddingfield* when, in considering the applicability of a statute providing that anyone murdering another from whom he would inherit property or take by deed, will or otherwise at such death, shall forfeit all right thereto, the court said (p 50):

"It was not the intention of the general assembly that vested rights of this character should be forfeited by the murderous act of the owner therein stated. It was only intended that he should not in any way acquire any new rights or property interest from others as the result of his crime. Any other construction of the statute would render it void. Our Constitution (article 1, § 12) prohibits the enactment of any law to the effect that a conviction for crime shall work corruption of blood or forfeiture of estate."

It would seem that the most that can be said for *Garwols,* then, is, first, as stated by Mr. Justice CARR, that this Court therein "rejected the theory that the legislature in the enactment of the statutes relating to the descent and distribution of property of persons dying intestate had pre-empted the field to the exclusion of common-law principles" and, further, that this Court decided that, in the enactment of said

statutes, the legislature is presumed to have had in mind that the courts would apply common-law rules to matters not specifically covered by Constitution or statute and that, hence, it was the legislative intent that the courts should apply to the said statutes, to the extent that they are silent thereon, the common-law principle that one who murders his ancestor shall not inherit his property. In the instant case, in contrast, we are dealing with an estate by the entireties which is not predicated on statute—there is no statute to construe and, in consequence, no occasion to seek a legislative intent on the subject; nor is there an applicable common-law rule or principle that one who murders his spouse shall be divested of his entireties title which theretofore vested in him while joined in the theoretic unity.

The power to fix punishments for crimes reposes in the legislature alone, not subject to judicial supervision, and the authority of courts to impose sentence or inflict punishment derives exclusively from statute. *People* v. *Whitney,* 105 Mich 622; *People* v. *Harwood,* 286 Mich 96; *In re Wall,* 330 Mich 430. The legislature has enacted a statute fixing the punishment for murder. It does not, nor could it properly, provide for the forfeiture of any or all rights in entireties property. I am persuaded that the decree of the trial court with respect thereto amounts to the inflicting, in a civil case, of a punishment for murder not provided or permitted by statute.

Recognizing that "no man shall take advantage of his own wrongs," it is my view that here the husband, as survivor, in continuing to hold the entirety, takes nothing that he did not already have before the crime. In *Oleff* v. *Hodapp, supra,* involving the right to ownership of a joint building and loan association account by the survivor who had murdered the other party to it, the court, in holding that the murderer was not thereby deprived of his right there-

to in the absence of a statute to that effect, said, appropriate to the situation at bar, the following (p 438) :

"We have heretofore stated that there is no statutory law in Ohio that deprives Tego of his right to this account. Counsel insist that Tego's right should be denied him because to allow it would be in contravention of sound public policy and place a premium on murder. *We are not subscribing to the righteousness of Tego's legal status; but this is a court of law and not a theological institution.* We have no power to attaint Tego in any way, shape, or form. Property cannot be taken from an individual who is legally entitled to it because he violates a public policy. Property rights are too sacred to be subjected to a danger of that character. We experience no satisfaction in holding that Tego is entitled to this account; but that is the law, and we must so find." (Italics supplied.)

That a holding that the husband is entitled to continue in the ownership of the whole of the entireties property is not open to the charge that he would thereby be permitted to profit from his own wrong, and that, in fact, the shoe is on the other foot was recognized, in effect, by this Court in the *Appeal of Nellie Lewis, supra.* There spouses acquired real estate by the entireties. Thereafter the husband violated his marital obligations and, in consequence, the wife was awarded a decree of divorce. The decree was silent as relates to the entireties property and there was then (1891) no pertinent statute covering the subject. Afterwards the husband died, leaving his divorced wife surviving. The probate court ordered the sale of an undivided half interest in the real estate as belonging to the husband's estate, which order was affirmed by the circuit court. In reversing the judgment below and holding that the divorced, surviving wife owned the whole, this Court rejected the lower court's view that the ten-

ancy by the entireties was converted, after or by the divorce, into a tenancy in common and said (p 344):

"We see no reason in holding that a husband or wife can, by violation of the marital obligations, obtain an interest in land which she or he does not possess while fulfilling such obligations. The common law should not, and in our judgment does not, permit a person thus to profit by his own gross wrong, and a violation of the most sacred obligation."

This language from *Nellie Lewis* and the above quotation from *Garwols* concerning the forfeiture of estates seem to me expressive of a view by this Court that it is not the leaving of a vested interest in entireties property undisturbed as it existed before the wrongdoing, but, rather, the changing of it into a tenancy in common that is susceptive to permitting a wrongdoer to profit from his misdeed. In this connection the distinguishing features of *Grose* v. *Holland,* 357 Mo 874 (211 SW2d 464), should be noted. It was there held, under a factual situation similar to that at bar, that the husband was entitled to a half interest as a tenant in common in what had been the entireties property. Decision was planted on the view that, if the right of survivorship were left intact, the husband would acquire an additional interest in the entireties property through the death of his wife because, under the common-law rule in effect in Missouri, "each spouse has a separate interest in the estate by the entirety that can be protected by a court of equity," which estate, upon divorce, "becomes an estate in common," and because "prior to the wife's death the husband must share the current profits with his wife. But after her death the husband does not share these profits." Such is not the common-law rule in Michigan. Here the husband and wife do not have separate interests in an estate by the entireties. At com-

mon law, in Michigan, divorce did not result in converting a tenancy by the entireties into a tenancy in common, as we shall see hereinafter, such result being permissible now solely by reason of statute. There is no comparable statute changing the common-law right of survivorship in entireties property in consequence of the murder of one spouse by the other. During the lifetime of both spouses the husband is entitled to the income and rent from entireties property and the wife has no right to share therein. *Way* v. *Root, supra; Morrill* v. *Morrill,* 138 Mich 112 (110 Am St Rep 306, 4 Ann Cas 1100); *Arrand* v. *Graham,* 297 Mich 559 (136 ALR 1206); *Maynard* v. *Hawley,* 331 Mich 123. If it were to be conceded, however, despite the fact that in legal contemplation the husband has gained nothing as survivor which he did not already have in the entireties property before the murder, that, nevertheless, as a practical matter, he has received a benefit from his own crime, as suggested in *Grose,* the question still remains under what legal theory or proposition of law the fact of that practical benefit can operate to work a forfeiture of his vested interest and rights. To hold, as in *Garwols,* that the fact of such benefit can serve to bar the right of inheritance in property in which he had no right or interest before the crime is one thing, but to hold that it can work a divesting and forfeiture of his vested property rights is an altogether different thing. To give the husband an undivided half interest as a tenant in common or to allow him anything other or less than his vested interests in the entirety and in the right of survivorship scarcely escapes the taint of forfeiture. To what constitutional, statutory or common-law provision or rule are we cited as authority for such violence to vested rights? If, on the other hand, equitable principles, humanitarian considerations or good morals may be invoked and said to warrant or

require stripping the husband of his vested rights, from whence stems the authority for yielding, after that divesting, to gentler impulses prompting the court to invest the husband, gratuitously, with an undivided half interest? To say that granting him an undivided half interest gives him everything he is entitled to under the situation disclosed by the record hardly suffices to indicate the legal basis upon which he is entitled even to that, particularly in view of the plaintiffs' cross appeal challenging the husband's right to any share whatsoever. Existence of a statute providing for such disposition in cases of divorce provides no authority for like action in cases of murder without express statutory provision therefor. What is there in the reasoning or decision in *Garwols* to support either divesting the husband of the whole or, thereafter, atoning therefor in part by making him a present of half? If he be thought, as in *Garwols,* to take something by inheritance from the wife which may be cut off by reason of his crime, is it not necessarily an inheritance of the whole which he must lose and not of an undivided half interest? How could it be otherwise since neither had a one-half interest during the lifetime of both?

Equally distinguishable is *Estate of King,* 261 Wis 266 (52 NW2d 885), involving, not an estate by the entireties, but a joint estate, concerning which the Wisconsin court said, in that case, that the survivor would take from his cotenant, at latter's death, an estate by inheritance and that either party might convey his interest with the effect that the grantee would become a tenant in common with the nonconveying tenant. Such being the attributes of the estate in question there, the court said that the wrongful death of one joint tenant at the hands of the other prevented the possibility that the former might have defeated, during his lifetime, a survivorship in the latter by conveyance to a third party.

The difference between an estate with such incidents and an estate by the entireties under Michigan law and between the necessary consequences thereto attending the murder of one cotenant by the other is manifest. Also distinguishable is *Hogan* v. *Martin* (Fla 1951), 52 So2d 806, involving an estate by the entireties, which, in Florida, independent of any statutory provision, may be converted by the court into an estate in common upon divorce. Such was not the common-law rule in Michigan; and while a statute now permits such action upon divorce, as previously stated, there is no Michigan statute providing for it in the case of the murder of one spouse by the other.

Is there an analogy between the situation presented by a husband's wrongful conduct resulting in divorce with a consequent division of the entireties property between the parties as tenants in common and the situation occasioned by the murder of one spouse by the other, such as to require the same disposition of the entireties property in the latter as in the former? On the basis of logic and reason alone, as well as on other grounds, it seems to me that the answer must be in the negative. It is said that an essential incident of an estate by the entireties is the marital union and that, therefore, if that relation be terminated and the theoretic union of the spouses destroyed, as by divorce, the estate by the entireties can no longer exist. From that premise it is urged that because, here, the marital unity was destroyed by the husband's commission of murder, the consequence to the estate by the entireties must be the same as in the case of divorce. This does not seem to me to follow. When divorce occurs, and both parties remain alive, there is, as yet, no survivor, no right of one of the parties to claim the whole as survivor independent of the other, and, in consequence, the question is presented: if the estate by

the entireties can no longer exist, which of the 2 living parties then owns the property and in what form of tenancy? No such problem confronts us here. The instant the essential incident of marital union was destroyed by murder the husband stood as survivor, entitled to continue, alone, in ownership of the whole of the entireties property under the right of survivorship which had vested in him from the time the spouses took by the entireties. It is obviously for that reason that the Tennessee court, in *Beddingfield,* "Apparently * * * did not consider the bearing of the fact that the marital relation, an essential incident of the estate, was destroyed by the felonious act of the husband" because the marital relation had been an incident essential only to the estate by the entireties during the lifetime of both spouses, but not at all to the continuing ownership of the surviving husband at the instant of the wife's death.

The theory that the mentioned analogy exists between the two situations encounters even greater difficulty in the fact that the transforming of entireties property, upon divorce, into a tenancy in common rests, in Michigan, not at all upon a common-law principle that "the estate by the entireties may not continue as such" after divorce because "an essential incident of the estate by the entireties was gone," but, on the contrary, the transformation occurs solely because of the provisions of the statute requiring or permitting it, CL 1948, § 552.102 (Stat Ann § 25.132), which statute must be read into every conveyance by the entireties as of the time of vesting, thus becoming a limitation thereon or condition thereof at that time. The current provisions of that statute stem from 2 statutory enactments. The first was PA 1897, No 197 (CL 1948, § 552.27 [Stat Ann § 25.105]), which authorized the court, in divorce, to decree such division of entireties property between

the parties as it might determine. Later, PA 1909, No 259 (CL 1948, § 552.101 *et seq.* [Stat Ann § 25.131 *et seq.*]), augmented that act by further providing that, in the absence of such provision in the decree, the parties shall own as tenants in common. Prior to the enactment of these statutes, this Court, in 1891, held, in the *Appeal of Nellie Lewis, supra,* that:

"A husband and wife take as tenants by *entirety,* and not as *joint tenants,* under a joint deed to both; and the estate thus created, with the attendant right of survivorship, is not affected by a decree of divorce." (Syllabus.)

Decision in that case was that, at the death of the husband, the divorced wife owned the whole of the property as survivor. Such was the common-law rule in Michigan. In *Jeske* v. *Jeske,* 147 Mich 367, it was recognized that it was solely by reason of the statute that the common-law rule as announced in *Nellie Lewis* no longer applied. See, also, *Allen* v. *Allen,* 196 Mich 292, for effect of the statute. There being no comparable statute regarding the ownership or disposition of entireties property upon the murder of one spouse by the other, how can an analogy be said to exist requiring like disposition, in both situations, of entireties property in derogation of the common law?

To conclude, it seems to me that property rights which vested in the husband before the wife's death are by the decree of the trial court taken from the husband, without constitutional or statutory authority and in defiance of long-established and recognized common-law rules applicable to entireties property. Equally without sanction of law, the decree awards him an undivided half interest in the property as tenant in common. The decree should be modified to provide that the husband is the sole owner of the entireties property and in all other respects affirmed,

without costs to either party, neither having prevailed in full.

SHARPE, BOYLES, and REID, JJ., concurred with DETHMERS, J.