In re Bonnie May SPEARS, Debtor.

In re Michael J. Sedgewick, Sr., Debtor.

In re Ronnie Lynn Gillis, Debtor.

In re Roger Alan Brehm, Debtor.

Nos. HT 03–00738, HT 03–01234, HT 03–01306, HT 03–03959.

United States Bankruptcy Court, W.D. Michigan.

Sept. 9, 2004.

Steven L. Rayman, Rayman and Stone, Kalamazoo, MI, Michael E. Hall, Patrick S. Fragel, Paul I. Bare, Attorney at Law, Traverse City, MI, for Debtors.

## MEMORANDUM AND ORDER RE: AUGUST 19, 2004

## DISTRICT COURT JUDGMENT

JEFFREY R. HUGHES, Bankruptcy Judge.

On August 19, 2004, the District Court reversed the order I issued in connection with these four Chapter 7 bankruptcy proceedings. *Spears v. Boyd (In re Spears)*, 313 B.R. 212 (W.D.Mich.2004). My order addressed the administration of a debtor's claimed exemption of his or her interest in Michigan entireties property. I concluded that the intersection of the Bankruptcy Code and Michigan law concerning entireties property resulted in the severance of the entirety estate upon the commencement of a debtor's bankruptcy proceeding. I further concluded that the *Trickett* procedure this court had adopted over 20 years ago to administer entireties property claimed as exempt was unnecessary. I set forth the reasons for my decision in the opinion that accompanied the order.[1]

The District Court utilized a culinary metaphor to explain its reasons for reversing my order. Choice cuts from its opinion are:

> The Bankruptcy Court's dish is *nouveau* cuisine—a reinterpretation of [the Bankruptcy Code] in light of recent Supreme Court precedent, which precedent has no direct application to bankruptcy

law . . . a more detailed description of the faire [sic] now follows.[2]

\* \* \* \* \* \*

> As for the *nouveau* cuisine, it serves a half-portion of exemption premised on the notion that the filing of bankruptcy by a single spouse operates to sever the entireties and leave each spouse with an undivided one-half interest in the real estate.[3]

\* \* \* \* \* \*

> Drizzled throughout the Bankruptcy Court's Opinion is a discussion of the United States Supreme Court's Opinion in *United States v. Craft*, 535 U.S. 274, 122 S.Ct. 1414, 152 L.Ed.2d 437 (2002).[4]

\* \* \* \* \* \*

> Whatever else may be said for this *entree*, it is decidedly flavored in Michigan law.[5]

\* \* \* \* \* \*

> In summary, this court has tasted the *nouveau* cuisine. It tastes bad because it substitutes for the sugar of intended exemptions some ill-considered spices—which are foreign to both the Bankruptcy Code and the tenets of Michigan law.[6]

Galileo, the 17th century astronomer, once championed a novel theory too. For nearly 1500 years astronomical thought had been dominated by the theory that the sun revolved around the earth. Galileo had the audacity to argue that the earth in fact revolved around the sun. He posited this theory knowing full well that the Church would vigorously resist it. He had hoped, perhaps naively, that its attack

---

1. *In re Spears*, 308 B.R. 793 (Bankr. W.D.Mich.2004).

2. *Spears v. Boyd*, 313 B.R. at 214.

3. *Id.* at 217.

4. *Id.*

5. *Id.* at 216.

6. *Id.* at 218.

would be confined to logic and reasoned argument. The Church instead chose other tools, including insult and sarcasm.

The Bankruptcy Code[7] is a careful and comprehensive expression of what Congress intended to be the uniform bankruptcy laws authorized by Article I of the Constitution. It is not a hotchpotch of legislative enactments added to the stew pot from time to time. A hotchpotch is in fact what the Bankruptcy Code replaced. However, codifications of the law have a price. A well drafted code demands the same discipline as the laws of nature. There cannot be inconsistency among its constituent parts.

The Church rejected Galileo's argument because it conflicted with how the Church wanted the universe to be. However, what the Church wanted could not change the fact that the laws of physics required the sun, not the earth, to be at the center of our solar system. I believe Galileo would have been quite content to accept the Ptolemaic view of the solar system had it been correct. However, intellectual honesty required him to reject that theory and to accept Copernicus' theory instead. That the Ptolemaic system had been accepted as true for 1500 years made no difference.

I recognize that issues concerning bankruptcy law and tenancies by the entirety are insignificant motes next to the cosmological issues debated by Galileo and the Church. I also do not pretend that the principles upon which I based my opinion are as immutable as those upon which Galileo relied. I must, after all, work with the laws of man; Galileo had the laws of creation. However, the comparison is nonetheless apt.

My opinion is based upon three fundamental rules. First, Michigan law concerning tenancies by the entirety unequivocally provides that such a tenancy can exist only if the co-tenants are husband and wife.[8] Second, Congress, when it enacted the Bankruptcy Code in 1978, unequivocally provided that all of a debtor's interests in property, including a debtor's interest in entireties property, transfers to a new entity (*i.e.*, the bankruptcy estate) upon the filing of his or her petition.[9] Third, the United States Supreme Court has unequivocally stated that I, as a federal judge charged with administering the Bankruptcy Code, am to defer to the property laws of Michigan unless some clearly defined federal interest directs me to the contrary. *Butner v. U.S.*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979).[10]

The conundrum created by the convergence of the first two of these rules is that a legal, but incorporeal, "person" ends up being the co-tenant with the non-filing spouse. In other words, what had been a co-tenancy between husband and wife before the commencement of the debtor's bankruptcy estate becomes a co-tenancy between the non-filing spouse and a creation of the law immediately upon the commencement of the debtor's case. How,

**7.** 11 U.S.C. §§ 101–1330.

**8.** *Budwit v. Herr*, 339 Mich. 265, 63 N.W.2d 841 (1954). *See also, Blachy v. Butcher*, 221 F.3d 896, 907 (6th Cir.2000); *U.S. v. Noble*, 1999 WL 810437, at *1 (W.D.Mich.1999).

**9.** 11 U.S.C. § 541; H.R.Rep. No. 95–595 at 367–68 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6323–24. S.Rep. No. 95–989, at 82 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787,

5868. *See also, Liberty State Bank v. Grosslight (In re Grosslight)*, 757 F.2d 773, 775 (6th Cir.1985).

**10.** *Nobelman v. American Savings Bank*, 508 U.S. 324, 113 S.Ct. 2106, 2108, 124 L.Ed.2d 228 (1993); *Kitchen v. Boyd (In re Newpower)*, 233 F.3d 922, 928 (6th Cir.2000); *United States v. Chalmers (In re Wheeler)*, 252 B.R. 420, 426 (W.D.Mich.2000).

then, can the tenancy by the entireties continue? The solution to this puzzle deserves better than the one Alexander applied to the Gordian knot. That is why I devoted the time I did to my opinion.

The District Court states that I should not have "drizzled" the Supreme Court's opinion in *United States v. Craft,* 535 U.S. 274, 122 S.Ct. 1414, 152 L.Ed.2d 437 (2002) into my "dish."[11] Contrary to the District Court's suggestion, I did recognize that *Craft* involved federal tax law, not bankruptcy law.[12] However, *Craft* also addressed Michigan law with respect to tenancies by the entirety. I thought that Justice O'Connor, who wrote the *Craft* opinion, offered a thorough and accurate explanation of that law. Therefore, I relied upon it for that purpose.

The District Court also characterizes my reasoning as a "purely theoretical concept" that was **implicitly** rejected in *Grosslight* and has **no currency** in existing bankruptcy practices."[13] I am impressed that the District Court was able to see pages and pages of unwritten analysis that I did not. I had concluded that the Sixth Circuit had simply overlooked an inconsistency that *Grosslight* itself revealed. My apparent error is that I failed to read between *Grosslight's* lines.

The "currency" the District Court adopted to replace my theory as its coin is *In re Ford,* 3 B.R. 559 (Bankr.D.Md.1980). Whether it is appropriate to base an economy upon *Ford* is a legitimate question, given that it is a one paragraph proclamation offered without justification.[14] In any event, *Ford's* relevance is questionable since it is nothing more than a federal bankruptcy court's interpretation of Maryland's own variant of the "hoary doctrine of tenancy by the entirety."[15] I suppose it is always possible to explain *Ford* as yet another implicit pronouncement by the federal judiciary that a state's legislature or its courts has adjusted real property law to accommodate the anomaly created by the 1978 enactment of the Bankruptcy Code. However, Maryland law is not the coin of this District Court's realm. Michigan law is its legal tender.

The District Court asks "[w]here pray tell does the Bankruptcy Court get this recipe [that a bankruptcy petition severs a Michigan entireties estate], since there is no provision of Michigan law nor the Bankruptcy Code which directs that the filing of a bankruptcy petition by a single spouse severs an estate held by the entireties?"[16] The better question is where does the District Court find in either Michigan law or the Bankruptcy Code the law necessary to explain how a tenancy by the entirety can continue post-petition when one of the post-petition co-tenants (and, in the case of a joint petition, both co-tenants) is incapable of being married, let alone breathing air. When a bankruptcy petition is filed, the Bankruptcy Code requires the debtor's interest in entireties property, but not the other co-tenant's interest, to transfer to a newly created legal entity known as a bankruptcy estate. 11 U.S.C. § 541(a)(1) and (c)(1). This relatively recent change in the bankruptcy laws begs the question which until 1978 did not have to be asked: How does the bankruptcy estate then own the interest it has acquired vis-a-vis the

---

11. *See, In re Spears,* 308 B.R. at 803 and 811, n. 26.

12. *Spears v. Boyd,* 313 B.R. at 217.

13. *Id.* (emphasis added).

14. *See, In re Spears,* 308 B.R. 793, 812–14 (Bankr.W.D.Mich.2004).

15. *Spears,* 313 B.R. at 216.

16. *Spears v. Boyd,* 313 B.R. at 217.

other co-tenant? *Butner* directs that state law is to control this question unless the Bankruptcy Code explicitly overrides the applicable state law. Michigan law is quite clear that a tenancy by the entirety can be held only by a husband and a wife. Where within Michigan law is the exception needed to compensate for the change in the co-tenants' marital status caused by Congress' 1978 revision of the bankruptcy laws? Where is the explicit expression within the Bankruptcy Code that empowers me to ignore Michigan law if no such exception exists?

The District Court states that it is obvious that Congress could not "have intended to direct such a dramatic alteration of state property rights by mere silence." [17] I will not speculate to the contrary. Instead, I merely observe that my resolution of the problem posed in the cases before me did not deny these debtors the exemptions claimed in their residences. Each debtor would have received exactly what the Bankruptcy Code permitted as that debtor's exemption: the debtor's interest in property the debtor **"had"** owned as a tenant by the entirety **"immediately before** the commencement of the case" as adjusted for joint claims. 11 U.S.C. § 522(b)(2)(b) (emphasis added).[18] The interest exempted by each debtor also would have been protected from that debtor's post-petition creditors, both joint and individual. 11 U.S.C. § 522(c).

However, the debtors before me were not asserting that the severance of the entireties estates would impair their claimed exemptions. Rather, they were arguing that their non-filing spouses' interests would be impaired because their non-filing spouses would no longer enjoy the protection against their own individual creditors if the bankruptcy petition severed the Michigan entireties estates. Where within the Bankruptcy Code is Congress' intent to extend the protection of the bankruptcy laws to the non-filing spouse under such circumstances? [19] The co-debtor stay provided by 11 U.S.C. § 1301 is an example of when Congress has extended bankruptcy protection to third parties. However, I can find no similar provision within 11 U.S.C. § 522. Is this another example where law has been adopted implicitly rather than explicitly?

Perhaps the District Court is correct. Perhaps Congress never intended the consequences that logically result from its decision in 1978 to change the bankruptcy law and to include the debtor's interest in entireties property as part of the bankruptcy estate. Obviously, the laws governing debtor/creditor relations are not the same as those that defined the debate

---

17. *Spears v. Boyd,* 313 B.R. at 217.

18. *See also, In re Spears,* 308 B.R. at 813–14.

19. The District Court suggests that the severance issue is unique to those bankruptcies where only one spouse has filed for relief. The District Court is mistaken. Each of the matters before me involved a single debtor. However, a severance would have also occurred had both spouses filed a joint petition in any of those cases. The only difference would have been that two separate bankruptcy estates would have been created and, therefore, two incorporeal entities (*i.e.,* two

bankruptcy estates) would become the post-petition owners of the pre-petition entireties property as opposed to only one such entity and the non-filing spouse. *See,* 11 U.S.C. § 541(a); Fed.R.Bankr.P. 1015. Where is the exception under Michigan law that permits two entities who are incapable of being married to nonetheless own property as tenants by the entirety? Where is the express federal interest that permits two bankruptcy estates to own property as tenants by the entirety when Michigan law unequivocally states that such a tenancy may not exist under such circumstances?

between Galileo and the Church. Physical laws are rigid; legislation is not. However, Congress, not a court, is the creator of the bankruptcy universe. My duty is to enforce the laws that Congress has constitutionally enacted. My duty is not to correct what I might perceive to be its mistakes.

The Supreme Court made exactly the same observation when it recently interpreted a different provision of the Bankruptcy Code.

If Congress enacted into law something different from what it intended, then it should amend the statute to conform it to its intent. "It is beyond our province to rescue Congress from its drafting errors, and to provide for what we might think ... is the preferred result." *United States v. Granderson,* 511 U.S. 39, 68, 114 S.Ct. 1259, 127 L.Ed.2d 611 (1994) (concurring opinion). This allows both of our branches to adhere to our respected, and respective, constitutional roles. In the meantime, we must determine intent from the statute before us.

*Lamie v. United States Trustee,* 540 U.S. 526, 124 S.Ct. 1023, 1034, 157 L.Ed.2d 1024 (2004).

Therefore, I respectfully disagree with the District Court's opinion. However, to continue the metaphor the District Court began, I accept that I am just a sous chef who labors in another's kitchen. As such, I must eat the humble pie which has been served. For the reasons stated in the District Court's August 19, 2004 Opinion, the Chapter 7 Trustee is directed to administer the exemptions claimed by each of the debtors in his or her interest in the subject residences consistent with the District Court's opinion and the procedure set forth in *Michigan National Bank v.*

*Chrystler (In re Trickett),* 14 B.R. 85 (Bankr.W.D.Mich.1981).