## *In re* NALE ESTATE

Docket No. 293802. Submitted November 10, 2010, at Detroit. Decided November 23, 2010, at 9:10 a.m.

Fayette L. Nale was convicted by a jury in the Macomb Circuit Court of the voluntary manslaughter of her husband, Michael L. Nale. Julia Cook, the successor personal representative of Michael Nale's estate, then petitioned the Macomb County Probate Court for an order requiring Fayette Nale to forfeit and revoke all benefits from the decedent's estate. The probate court, Pamela G. O'Sullivan, J., entered an order granting the petition. Fayette Nale appealed, contending that the terms "feloniously and intentionally," as used in MCL 700.2803, the statute providing for such forfeiture by an individual who feloniously and intentionally kills the decedent, refers to first- and second-degree murder, but not manslaughter.

The Court of Appeals *held*:

1. The Supreme Court has defined voluntary manslaughter as an intentional killing committed under the influence of passion or hot blood produced by adequate provocation and before a reasonable time has passed for the blood to cool. An essential element of the crime of voluntary manslaughter is the intent to kill or commit serious bodily harm. Voluntary manslaughter has been specifically designated by the courts as an "intentional killing." The common-law application of the "slayer rule," which prohibits a person who commits a murder from benefitting from the person's criminal act or a devisee from taking under the will of a testator whose death was caused by the criminal and felonious act of the devisee, extends beyond the crime of murder to manslaughter.

2. Had the Legislature intended to limit the operation of MCL 700.2803 to instances where the beneficiary murders the decedent, it could have used the term "murder." Because voluntary manslaughter is an intentional killing and the common-law slayer rule has never been limited to the crime of murder, MCL 700.2803 operates to prevent one convicted of voluntary manslaughter from benefitting from the estate of the victim.

Affirmed.

CRIMINAL LAW — FORFEITURES AND PENALTIES — VOLUNTARY MANSLAUGHTER —
    DECEDENTS' ESTATES — WORDS AND PHRASES — INTENTIONALLY.

> The term "intentionally" in the statute providing that an individual
> who feloniously and intentionally kills the decedent forfeits all
> benefits with respect to the decedent's estate and providing that if
> the decedent died intestate, the decedent's intestate estate passes
> as if the killer disclaimed his or her intestate share, prevents a
> person convicted of voluntary manslaughter from benefitting from
> the victim's estate (MCL 700.2803).

*Simasko, Simasko & Simasko, P.C.* (by *Scott E.
Bright*), for Julia Cook.

*Sherry A. Wells* for Fayette L. Nale.

Before: OWENS, P.J., and WHITBECK and FORT HOOD, JJ.

PER CURIAM. Respondent appeals as of right the
probate court's grant of petitioner's petition for forfei-
ture and revocation of benefits. Respondent argues that
the probate court improperly construed MCL 700.2803,
Michigan's "slayer statute," as preventing her, as one
convicted of the voluntary manslaughter of the dece-
dent, from receiving benefits from the decedent's es-
tate. We affirm. This appeal has been decided without
oral argument pursuant to MCR 7.214(E).

### I. FACTS

Respondent's husband, Michael Stephen Nale (the
"decedent"), was stabbed to death on September 13,
2007. Respondent was charged with second-degree
murder, MCL 750.317, in his death. On February 19,
2009, a jury convicted her of voluntary manslaughter,
MCL 750.321, and she was sentenced to 34 to 180
months in prison.

On August 5, 2009, petitioner, Julia Cook, successor
personal representative of the decedent's estate, filed in

the Macomb County Probate Court a petition for forfeiture and revocation of benefits, arguing that respondent had forfeited all benefits from the decedent's estate under MCL 700.2803 because she had "feloniously and intentionally" killed the decedent. Respondent argued that the term "feloniously and intentionally," as used in MCL 700.2803, refers to first- and second-degree murder, but not manslaughter. At a hearing on the petition, the court disagreed and entered an order granting the petition.

## II. STANDARD OF REVIEW

In general, an appeal from a probate court decision is on the record, not de novo. MCL 600.866(1); *In re Temple Marital Trust*, 278 Mich App 122, 128; 748 NW2d 265 (2008). Nonetheless, questions of law, such as issues of statutory construction, are reviewed de novo. *Temple*, 278 Mich App at 128. The instant case involves a question of law construing MCL 700.2803, and our review is de novo.

## III. ANALYSIS

When interpreting statutes, a court's primary goal is to determine and give meaning to the Legislature's intent. *McJunkin v Cellasto Plastic Corp*, 461 Mich 590, 598; 608 NW2d 57 (2000). Once ascertained, the Legislature's intent must prevail despite any conflicting rule of statutory construction. *Terzano v Wayne Co*, 216 Mich App 522, 526-527; 549 NW2d 606 (1996). This Court may determine legislative intent by considering the language of the statute and the general scope the statute seeks to accomplish or the evil it seeks to remedy. *Cowen v Dep't of Treasury*, 204 Mich App 428, 431-432; 516 NW2d 511 (1994). In construing the language of a statute, "the Legislature is deemed to act

with an understanding of common law in existence before the legislation was enacted." *Nation v W D E Electric Co*, 454 Mich 489, 494; 563 NW2d 233 (1997).

The Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq.*, provides that a devisee who "feloniously and intentionally" kills a decedent forfeits all benefits from the decedent's estate. MCL 700.2803 states, in pertinent part:

> (1) An individual who feloniously and intentionally kills the decedent forfeits all benefits under this article with respect to the decedent's estate, including an intestate share, an elective share, an omitted spouse's or child's share, a homestead allowance, a family allowance, and exempt property. If the decedent died intestate, the decedent's intestate estate passes as if the killer disclaimed his or her intestate share.
>
> (2) The felonious and intentional killing of the decedent does all of the following:
>
> (a) Revokes all of the following that are revocable:
>
> (*i*) Disposition or appointment of property made by the decedent to the killer in a governing instrument.
>
> (*ii*) Provision in a governing instrument conferring a general or nongeneral power of appointment on the killer.
>
> (*iii*) Nomination of the killer in a governing instrument, nominating or appointing the killer to serve in a fiduciary or representative capacity, including a personal representative, executor, trustee, or agent.
>
> (b) Severs the interests of the decedent and killer in property held by them at the time of the killing as joint tenants with the right of survivorship, transforming the interests of the decedent and killer into tenancies in common.

This provision, sometimes referred to as a "slayer rule," is derived from the common-law rules that one who commits a murder cannot benefit by his or her criminal

act and that no devisee can take under the will of a testator whose death has been caused by the criminal act of the devisee. *Garwols v Bankers Trust Co*, 251 Mich 420, 428; 232 NW 239 (1930).

Respondent was convicted of voluntary manslaughter. She argues that manslaughter does not involve an "intentional killing," and notes that she was specifically acquitted of murdering her husband. Thus, respondent asserts that MCL 700.2803 does not prevent her from receiving benefits from the estate of her late husband. The issue in this case rests, therefore, on the meaning of the term "intentionally" as used by the Legislature in MCL 700.2803 when describing the killing of a decedent.

The manslaughter statute, MCL 750.321, encompasses two types of common-law manslaughter: voluntary and involuntary. *People v Townes*, 391 Mich 578, 588-589; 218 NW2d 136 (1974). Although the punishment for manslaughter is defined by statute, the common law defines the elements of voluntary and involuntary manslaughter. *People v Pouncey*, 437 Mich 382, 388; 471 NW2d 346 (1991).

The Michigan Supreme Court has defined voluntary manslaughter as an intentional killing committed under the influence of passion or hot blood produced by adequate provocation and before a reasonable time has passed for the blood to cool. *People v Mendoza*, 468 Mich 527, 534-535; 664 NW2d 685 (2003), citing *Maher v People*, 10 Mich 212, 219 (1862); *People v Fortson*, 202 Mich App 13, 19; 507 NW2d 763 (1993). An essential element of the crime of voluntary manslaughter is the intent to kill or commit serious bodily harm. *People v Delaughter*, 124 Mich App 356, 360; 335 NW2d 37 (1983). Murder and voluntary manslaughter are both homicides that share the element of being "intentional"

killings. *People v Hess*, 214 Mich App 33, 38; 543 NW2d 332 (1995). However, the existence of provocation characterizes the offense of voluntary manslaughter, *Pouncey*, 437 Mich at 388, whereas the presence of malice characterizes murder, *Mendoza*, 468 Mich at 534-535.

In contrast, involuntary manslaughter has been defined as " 'the killing of another without malice and unintentionally, but in doing some unlawful act not amounting to a felony nor naturally tending to cause death or great bodily harm, or in negligently doing some act lawful in itself, or by the negligent omission to perform a legal duty.' " *People v Scott*, 29 Mich App 549, 551; 185 NW2d 576 (1971), quoting *People v Ryczek*, 224 Mich 106, 110; 194 NW 609 (1923). Courts have, therefore, specifically designated voluntary manslaughter an "intentional" killing.

Before the enactment of MCL 700.2803 and its predecessor, MCL 700.251, the Michigan Supreme Court twice referred favorably to a description of the common-law "slayer rule" as described in Wharton on Homicide (3d ed), § 665:

> "To permit a person who commits a murder, or any person claiming under him, to benefit by his criminal act, would be contrary to public policy. And no devisee can take under the will of a testator whose death has been caused by the criminal and felonious act of the devisee himself. And in applying this rule, *no distinction can be made between a death caused by murder and one caused by manslaughter.*" [*Garwols*, 251 Mich at 428 (emphasis added); see also *Budwit v Herr*, 339 Mich 265, 270-271; 63 NW2d 841 (1954), quoting with approval *Garwols* quoting Wharton.]

While those cases did not involve the application of the common-law rule in the context of manslaughter, they nonetheless reveal that the common-law application of the slayer rule extends beyond the crime of murder to manslaughter.

When the Legislature enacts statutes in derogation of the common law, it is presumed to know the existence of the common law. *Wold Architects & Engineers v Strat*, 474 Mich 223, 234; 713 NW2d 750 (2006). Had the Legislature, knowing the state of the common law, intended to limit the operation of MCL 700.2803 to instances where the beneficiary murders the decedent, it could have used that specific term.[1] Furthermore, when a statute contravenes the common law, courts must construe the statute so that it results in the least change in the common law. *Nation*, 454 Mich at 494. Given that there is no reason to believe that the Legislature intended to limit the operation of MCL 700.2803 in this way, it is fair to conclude that it intended to encompass the crimes that the common law deems "intentional killings," including voluntary manslaughter.

Because voluntary manslaughter has been defined by Michigan courts as an intentional killing, and because the common law "slayer rule" has never been limited to the crime of murder, it follows logically that MCL 700.2803 operates to prevent one convicted of voluntary manslaughter from benefiting from the estate of the decedent. Because respondent was convicted of voluntary manslaughter, she is subject to the forfeiture rule of MCL 700.2803.

Affirmed.

---

[1] Cf. *Ernsting v Ave Maria College*, 274 Mich App 506, 513; 736 NW2d 574 (2007) (stating that had the Legislature intended to limit the term "law enforcement agency" to mean only state and local law enforcement agencies, it could have expressly so stated, as it did in other sections of the Whistleblowers' Protection Act, MCL 15.361 *et seq.*).