# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* Estate of PATRICK J. MIKES, SR.

| | |
|---|---|
| JOHN DOE, Personal Representative of the Estate of PATRICK J. MIKES, SR., | UNPUBLISHED<br>March 17, 2015 |
| Appellee, | |
| v | No. 319362<br>Oakland Probate Court |
| PATRICK J. MIKES, JR., | LC No. 2012-345433-DE |
| Appellant. | |

Before: MARKEY, P.J., and MURRAY and BORRELLO, JJ.

PER CURIAM.

Appellant Patrick J. Mikes, Jr. (respondent) appeals as of right an October 11, 2013 probate court order granting appellee/personal representative's (petitioner's) petition for revocation of benefits under Michigan's "slayer statute," MCL 700.2803. The court denied appellant's motion for rehearing and reconsideration on November 12, 2013. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

The 54-year-old decedent, who was respondent's father, died on August 10, 2012, from multiple blunt-force injuries to the head. Petitioner, the decedent's brother, was granted Letters of Authority on August 31, 2012. Decedent's heirs were his children Elizabeth, respondent, and Andrew D. Mikes.

On September 3, 2013, petitioner filed a petition for forfeiture and revocation of benefits. Petitioner noted that respondent had been charged with open murder and pleaded guilty but mentally ill to second-degree murder on August 6, 2013, in connection with his father's death. Petitioner attached a copy of a plea agreement in which respondent agreed to plead guilty but mentally ill in exchange for a sentence of 12 to 20 years imprisonment. On the plea form, respondent stated the facts as follows:

> On July 27, 2012 at approximately 7:00 a.m. an altercation occurred between myself and my father, Patrick Mikes, Sr. During the altercation, I struck

-1-

my father with a baseball bat rendering him incapable of fighting back. I then continued to strike him which resulted in his death. My intent was to cause great bodily harm.

Respondent was sentenced to 12 to 20 years in prison for second-degree murder, MCL 750.317. Petitioner alleged that respondent was barred from inheriting from his father under Michigan's slayer statute, MCL 700.2803, which provides in pertinent part that one who "feloniously and intentionally kills" the decedent forfeits all benefits from the decedent's estate.

Respondent answered, alleging that since his stated intent was to cause great bodily harm, the "feloniously and intentionally kills" requirement was not met. Respondent also argued that second-degree murder did not require intent to kill. Alternatively, respondent requested an evidentiary hearing so that his mental health professional could testify regarding his ability to form the requisite intent to kill.

A hearing on the petition was heard on October 4, 2013. Petitioner argued that although second-degree murder did not necessarily require intent to kill, looking to the facts of this crime, intent to kill was shown. Respondent replied that no findings of fact were made during the plea-taking, plus the plea was guilty but mentally ill, not simply "guilty." Furthermore, respondent argued, second-degree murder is a general intent crime and his intent was only to cause great bodily harm. This was not an intentional killing. However, respondent maintained, the probate court should make an independent determination following an evidentiary hearing, because the facts suggested that he could not have formed the necessary intent. The court responded as follows:

> I don't think that the mentally ill portion has anything to do with it because if that were the case it would be guilty [sic] by reason of insanity. That would be different. But there's nothing in the slayer statute that mentions mentally ill or not and he was still convicted. That just means that you go to jail but you get treated for your mental illness, it doesn't mean that you're not in prison and you go instead to the Center for Forensic Psychiatry. There's a big distinction between not guilty by reason of insanity or guilty but mentally ill. I don't really think that that applies in this situation.

> The bottom line is, I'm not going to have an evidentiary hearing. . . . I don't think that would be appropriate under the circumstances.

The court took the matter under advisement and issued an opinion on October 11, 2013. The court found that the legislative choice of the word "kill" rather than "murder" supported petitioner's argument. Respondent's argument urged insertion of definitions of *specific* intent into MCL 700.2803, which was neither permitted nor required. The Legislature stated its intent that a "killer or felon cannot profit from his or her wrong." MCL 700.2803(5). In addition, legislative amendments effective in 2012 expanded the statute to include forfeiture of rights from financial exploitation, child abuse, and domestic violence, and the Legislature also directed courts to accept a judgment of conviction as conclusive evidence for forfeiture. In absence of a conviction, the Legislature directed the court to determine criminal accountability using a

preponderance of the evidence standard. MCL 700.2803(6). This standard was clearly met here, the court found, by the criminal proceedings in which respondent pleaded guilty to second-degree murder. Respondent thus was barred from receiving any benefit from the death of his father.

Respondent moved for reconsideration or rehearing, arguing that the court did not take into account that his plea was one of guilty *but mentally ill*. Mental illness, as defined in MCL 330.1400(g), precluded respondent from forming the required intent to kill, and an evidentiary hearing should have been held.

The trial court denied the motion for reconsideration, holding that the plea of guilty but mentally ill did not require a different outcome. The court held that in accepting respondent's plea, the circuit judge necessarily determined under MCL 768.35 and MCL 768.36 that respondent was guilty beyond a reasonable doubt of second-degree murder and that he suffered from a mental illness. Nonetheless, respondent had not established by a preponderance of the evidence that he lacked the substantial capacity to appreciate the nature and quality or wrongfulness of his conduct or to conform his conduct to the requirements of the law. Respondent appeals as of right.

## II. ANALYSIS

Review of a probate court decision generally is on the record and is not de novo; if, however, the issue concerns statutory construction, as in this case, review is de novo. *In re Temple Marital Trust*, 278 Mich App 122, 128; 748 NW2d 265 (2008).

"When interpreting statutes, a court's primary goal is to determine and give meaning to the Legislature's intent." *Cook v Nale*, 290 Mich App 704, 706-707; 803 NW2d 907 (2010). "In construing a statute, the statutory provisions must be read in the context of the entire statute in order to produce a harmonious whole; courts must avoid a construction that would render statutory language nugatory." *People v McLaughlin*, 258 Mich App 635, 673; 672 NW2d 860 (2003). Additionally, "the Legislature is deemed to act with an understanding of common law in existence before the legislation was enacted." *Cook*, 290 Mich App at 706.

Michigan's "slayer statute," MCL 700.2803, is a subsection of the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq*., and it provides in relevant part as follows:

> (1) An individual *who feloniously and intentionally kills* or who is convicted of committing abuse, neglect, or exploitation *with respect to the decedent forfeits all benefits* under this article with respect to the decedent's estate. . . .

> (2) The felonious and intentional killing or the conviction of the felon for the abuse, neglect, or exploitation of the decedent does all of the following:

> (a) Revokes all of the following that are revocable:

> (*i*) Disposition or appointment of property made by the decedent to the killer or felon in a governing instrument.

* * *

(5) A killer's or felon's wrongful acquisition of property or interest not covered by this section shall be treated in accordance with the principle that a killer or felon cannot profit from his or her wrong.

(6) After all right to appeal has been exhausted, a judgment of conviction establishing criminal accountability for the felonious and intentional killing or the abuse, neglect, or exploitation of the decedent conclusively establishes the convicted individual as the decedent's killer or as a felon, as applicable, for purposes of this section. . . .

The "'slayer rule' derived from the common-law rules that one who commits a murder cannot benefit by his or her criminal act and that no devisee can take under the will of a testator whose death has been caused by the criminal act of the devisee." *Cook*, 290 Mich App at 707-708.

Respondent plead guilty to second-degree murder, MCL 750.317. "The elements of second-degree murder are: (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse." *People v Goecke*, 457 Mich 442, 463-464; 579 NW2d 868 (1998). "Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful[l] disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Id*. Respondent contends that his conviction did not establish that he "intentionally" killed the decedent because he stated in the plea that he only intended to cause great bodily harm. The resolution of respondent's argument turns on the definition of the term "intentionally" for purposes of the slayer statute.

In *Cook*, this Court examined the scope of the "slayer statute" in a case involving voluntary manslaughter. In that case, the respondent was convicted of voluntary manslaughter for the stabbing death of her husband. *Cook*, 290 Mich App at 705. The personal representative of the decedent petitioned the probate court for forfeiture and revocation of benefits under the "slayer statute" and the court granted the petition. *Id*. On appeal, the respondent argued that the phrase "feloniously and intentionally" as used in MCL 700.283 did not incorporate voluntary manslaughter because manslaughter did not involve an intentional killing. *Id*. at 707. This Court disagreed, noting that "[a]n essential element of the crime of voluntary manslaughter is the intent to kill *or commit serious bodily harm*," and that "[m]urder and voluntary manslaughter are both homicides that share the element of being 'intentional' killings." *Id*. at 709, citing *People v Hess*, 214 Mich App 33, 38; 543 NW2d 332 (1995).

In reaching its conclusion, the *Cook* Court noted that, at common law, the "slayer rule" was broad in scope and extended "beyond the crime of murder to manslaughter." *Id*. In support of this assertion, this Court quoted the following common-law description of the "slayer rule" as set forth in *Garwols v Bankers Trust Co*, 251 Mich 420, 428; 232 NW 239 (1930):

"'To permit a person who commits a murder, or any person claiming under him, to benefit by his criminal act, would be contrary to public policy. And no devisee can take under the will of a testator whose death has been caused by

-4-

the criminal and felonious act of the devisee himself. And, in applying this rule, no distinction can be made between a death caused by murder and one caused by manslaughter.'" [*Id.*, quoting Wharton on Homicide (3d ed.), § 665.]

The origins of the "slayer rule" support that it is broad and incorporated all forms of murder. Our Legislature is presumed to have been aware of the scope of the "slayer rule" when it enacted MCL 700.2803. *Nation*, 454 Mich at 494. Indeed, the structure of the statute, when read as a whole, supports that the Legislature intended that the codified version of the rule mirror the common-law rule. Specifically, the Legislature included paragraph (5) within the statute, which provides as follows:

> A killer's or felon's wrongful acquisition of property or interest not covered by this section shall be treated in accordance with the principle *that a killer or felon cannot profit from his or her wrong*. [Emphasis added.]

Given that statutes must be construed together to form a harmonious whole, *McLaughlin*, 258 Mich App at 673, and considering this Court's broad interpretation of the statute in *Cook*, we conclude that when paragraph (5) is considered in conjunction with the phrase "feloniously and intentionally kill" in paragraph (1), the legislation was clearly intended to apply broadly and incorporate second-degree murder.

Because MCL 700.2803 incorporates second-degree murder, respondent's conviction of that offense conclusively established that he was the decedent's killer for purposes of MCL 700.2803(1)[1] and the probate court properly granted petitioner's petition for forfeiture and revocation. Moreover, based on respondent's account of the crime in his plea, notwithstanding his conviction, the probate court could have concluded by a preponderance of the evidence that respondent feloniously and intentionally killed his father. See MCL 700.2803(6) (providing that in the absence of a conviction, upon motion, the court "shall determine, whether, under the preponderance of evidence standard, the individual would be found criminally accountable for the felonious and intentional killing of the decedent").

Here, by his own admission, respondent struck the decedent with a baseball bat, rendering him incapable of defending himself, and then continued to beat him until he died. As this Court has previously noted, "[t]he intent to kill may be implied where the actor actually intends to inflict great bodily harm or the natural tendency of his behavior is to cause death or great bodily harm." *People v Watts*, 149 Mich App 502, 513-514; 386 NW2d 565 (1986); see also *People v Morrin*, 31 Mich App 301, 310-311; 187 NW2d 434 (1971) ("[A]s malice aforethought is now defined, a killing may be murder even though the actor harbored no hatred or ill will against the victim and even though he acted on the spur of the moment.") Here, the preponderance of the evidence supported that respondent's actions evinced intent to kill. Moreover, the "catch all" provision in MCL 700.2803(5), which provides that "a killer or felon cannot profit from his or her wrongdoing," further supported the probate court's decision in this

---

[1] Respondent does not contend that he is has not exhausted "all right to appeal" his criminal conviction for purposes of MCL 700.2803(6).

case. One who bludgeons another to death by repeating striking him with a baseball bat cannot profit from such conduct.

Next, respondent argues that the probate court erred in denying his request for an evidentiary hearing. Respondent requested an evidentiary hearing to allow his mental health professional to testify that he lacked the ability to form the requisite intent.

We review a lower court's decision whether to hold an evidentiary hearing for an abuse of discretion. *People v Unger*, 278 Mich App 210, 216-217; 749 NW2d 272 (2008). An abuse of discretion occurs when the court's decision falls outside the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

The probate court held that an evidentiary hearing was not necessary. This did not constitute an abuse of discretion. MCL 700.2803(6), quoted above, provides that a conviction "conclusively establishes" the defendant as "the decedent's killer or as a felon, as applicable, for purposes of this section."[2] The probate court appropriately found that the "mentally ill" portion respondent's plea did not change this result and therefore there was no need to hold an evidentiary hearing. Specifically, MCL 768.36 sets forth the requirements for finding a criminal defendant "guilty but mentally ill," as follows:

> (1) If the defendant asserts a defense of insanity in compliance with section 20a of this chapter, the defendant may be found "guilty but mentally ill" if, after trial, the trier of fact finds all of the following:
>
> (a) The defendant is guilty beyond a reasonable doubt of an offense.
>
> (b) The defendant has proven by a preponderance of the evidence that he or she was mentally ill at the time of the commission of that offense.
>
> (c) The defendant *has not established* by a preponderance of the evidence *that he or she lacked the substantial capacity* either to appreciate the nature and quality or the wrongfulness of his or her conduct or to conform his or her conduct to the requirements of the law. [Emphasis added.]

Thus, by accepting respondent's plea, the circuit court necessarily found that respondent failed to establish by a preponderance of the evidence that he lacked the capacity to either appreciate "the nature and qualify or the wrongfulness of [his] conduct or to conform [his] conduct to the requirements of the law." Therefore, simply because respondent plead guilty but mentally ill did not amount to poof that he did not intend to kill his father. Furthermore, the plea did not necessitate an evidentiary hearing where respondent's admissions in the plea would have allowed the probate court to conclude by a preponderance of the evidence that respondent feloniously and intentionally killed his father or where the court could have concluded that

---

[2] Respondent does not contend that he is in the process of exhausting his right to appeal his criminal conviction under MCL 700.2803(6).

respondent's conduct fell within the catch-all provision under MCL 700.2803(5). In short, based on the statutory provisions, the court did not abuse its discretion in concluding that an evidentiary hearing was not warranted, all of the relevant facts having been established by the circuit and probate court proceedings.

Affirmed. Appellee having prevailed, may tax costs. MCR 7.219(A). We do not retain jurisdiction.

/s/ Jane E. Markey
/s/ Christopher M. Murray
/s/ Stephen L. Borrello