# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* ESTATE OF MAXINE HADLEY.

---

SCOTT S. HADLEY,

      Petitioner-Appellee,

v

TIMOTHY D. BEETSCHEN,

      Respondent-Appellant.

UNPUBLISHED
December 21, 2017

No. 332888
Oakland Probate Court
LC No. 2014-358137-DA

---

Before: TALBOT, C.J., and BORRELLO and RIORDAN, JJ.

PER CURIAM.

Respondent appeals by right an April 19, 2016, circuit court order holding that pursuant to MCL 700.2803, respondent was not entitled to inherit from the decedent's estate. For the reasons set forth in this opinion, we affirm.

## I. FACTS

The decedent, Maxine Hadley, who was respondent's mother, died on May 23, 2014 from carbon monoxide poisoning; the manner of death was listed as a homicide. Petitioner, Scott S. Hadley, the decedent's son, was granted letters of authority on August 27, 2014. The decedent's heirs were her two sons—respondent and petitioner.

Respondent was charged with first-degree arson and open murder in relation to the events that led to the decedent's death; following a preliminary examination, he was bound over for trial on those charges. Before trial, respondent pleaded guilty to involuntary manslaughter and second-degree arson. Respondent was sentenced to 20 to 60 years' imprisonment for arson and 15 to 30 years' imprisonment for involuntary manslaughter.

-1-

On November 11, 2015, petitioner filed a petition for a hearing to determine the applicability of MCL 700.2803, which, at the time of the hearing,[1] provided in relevant part as follows:

(1) An individual who feloniously and intentionally kills or who is convicted of committing abuse, neglect, or exploitation with respect to the decedent forfeits all benefits under this article with respect to the decedent's estate. . . .

(2) The felonious and intentional killing or the conviction of the felon for the abuse, neglect, or exploitation of the decedent does all of the following:

(a) Revokes all of the following that are revocable:

(*i*) Disposition or appointment of property made by the decedent to the killer or felon in a governing instrument.

* * *

(5) A killer's or felon's wrongful acquisition of property or interest not covered by this section *shall* be treated in accordance with the principle that a killer or felon cannot profit from his or her wrong.[2]

(6) After all right to appeal has been exhausted, a judgment of conviction establishing criminal accountability for the felonious and intentional killing or the abuse, neglect, or exploitation of the decedent conclusively establishes the convicted individual as the decedent's killer or as a felon, as applicable, for purposes of this section. *With respect to a claim of felonious and intentional killing, in the absence of a conviction, the court, upon the petition of an interested person, shall determine whether, under the preponderance of evidence standard, the individual would be found criminally accountable for the felonious and intentional killing of the decedent.* If the court determines that, under that standard, the individual would be found criminally accountable for the felonious and intentional killing of the decedent, the determination conclusively establishes the individual as the decedent's killer for purposes of this section. (Emphasis added.)

Petitioner noted respondent's aforementioned pleas in connection with his mother's death. Respondent answered, arguing that MCL 700.2803 is inapplicable in this case, since respondent was convicted of *involuntary* manslaughter, and there was no clear evidence that he feloniously and *intentionally* killed the decedent. Respondent also argued that MCL 700.2803(6) should not apply in this case because respondent was criminally convicted, and therefore the

_____

[1] MCL 700.2803 was amended effective June 27, 2016. 2016 PA 57.

[2] Effective June 27, 2016, the word "shall" was changed to "must." 2016 PA 57.

probate court was barred from making its own determination that respondent was criminally responsible for feloniously and intentionally killing the decedent.

Following a hearing where the court heard oral arguments, on April 19, 2016, the court issued an opinion and order, finding that pursuant to MCL 700.2803, respondent was not entitled to inherit from the decedent's estate. The court explained:

> On September 29, 2014 following a preliminary examination . . . [the judge] found probable cause that [respondent] had committed First Degree Arson and Open Murder and [respondent] was bound over to Circuit Court for trial on these two felonies.
>
> On April 16, 2015, [respondent], pled guilty to first degree arson and common-law involuntary manslaughter of [decedent] . . . . On that date, under oath, [respondent] admitted that on May 23, 2014 while upset and intoxicated, he went to the downstairs of the home he shared with his mother. [Respondent] had lit a cigarette at the time he entered the downstairs and with knowledge that a propane tank was leaking, ignited a house fire. [Decedent] died in that house fire.
>
> The record of the Sentencing of [respondent] reflects that an accommodation by the prosecutor was granted to [respondent]. Per the transcript of the May 19, 2015 Sentencing, in the spirit of the plea agreement and to provide [respondent] a "B-Grid" sentencing, [respondent's] charge was amended from First Degree Arson to Second Degree Arson. . . .
>
> * * *
>
> The result of the accommodation is that [respondent] was convicted of Second Degree Arson and Involuntary Manslaughter, yet he allocuted to the elements of First Degree Arson. It is the complete and judicially noted record and sworn testimony that compels the reversal of the court's previous orders and obviates any evidentiary hearing.
>
> * * *
>
> The record of the criminal proceedings and the death certificate of [decedent] demonstrate that [respondent] willfully or maliciously burned a home which resulted in [decedent's] death. [Respondent's] amended "conviction" of Second Degree Arson does not alter the facts and evidence demonstrated in the criminal proceeding. []
>
> In [the] second sentence of [MCL 700.2803(6)], the probate court is directed to access the evidence of "criminal accountability" under a "preponderance of the evidence standard", when, as is the case here, a claim of "felonious and intentional killing of the decedent" has been leveled against one heir. In doing so, the record before the court, as established by the sworn testimony of [respondent] and the testimony from the preliminary plainly and unequivocally satisfy the probate evidentiary standard of "preponderance of the evidence". Those facts and the evidence clearly established "under the

-3-

preponderance of evidence standard" [respondent] was "criminally accountable" for his mother['s] death. []

* * *

It has been argued by respondent . . . that the death of his mother was not his intention . . . or in the alternative his diminished mental capacity . . . prevents the operation of MCL 700.2803 despite his criminal convictions. In support of his claim, [respondent] articulates arguments akin to "negligence" or accident. Such arguments are unavailing. [] [Respondent's] conviction . . . of involuntary manslaughter of his mother . . . demonstrates that he committed the killing of his mother with a *mens rea* other than malice, and that he was not justified or excused from criminal accountability for his actions resulting in her death. When these established facts and tenets of law are applied to MCL 700.2803(6), it is clear that the court should not conduct an evidentiary hearing. Evidence establishing criminal accountability by a preponderance of the evidence exists in the criminal proceedings.

The relevant evidence is found in the unrefuted death certificate. It existis in the transcript of the evidentiary hearing which resulted in a judicial finding of probably [sic] cause that [respondent] committed open murder resulting in the death of his mother and that he committed first degree arson. The evidence exists in [respondent's] allocution to first degree arson on April 16, 2015. When this established evidence is weighed against the . . . standard of "preponderance of the evidence" . . . *it is clear that [respondent] would be held criminally accountable for the felonious and intentional killing under the preponderance of the evidence standard.*

* * *

This evidence taken as a whole establishes by a preponderance of the evidence that [respondent] is criminal accountability [sic] for the "felonious and intentional killing" of his mother. [Emphasis added.]

Finally, the court also noted that MCL 700.2803(5), established that "a killer or felon shall not profit from his or her wrong," supported the contention that respondent should not inherit as he "committed a felony which resulted in his mother's death." The court entered a written order on April 19, 2016. This appeal ensued.

## II. STANDARD OF REVIEW

Respondent argues that the probate court erred in finding that he feloniously and intentionally killed the decedent after he was convicted of involuntary manslaughter and second-degree arson.

We review de novo a probate court's interpretation and application of a statute, *In re Temple Marital Trust*, 278 Mich App 122, 128; 748 NW2d 265 (2008), while a trial court's factual findings are reviewed for clear error. *Alan Custom Homes, Inc v Krol*, 256 Mich App

-4-

505, 512; 667 NW2d 379 (2003). "A finding is clearly erroneous where, after reviewing the entire record, this Court is left with a definite and firm conviction that a mistake has been made." *Id*.

Resolution of the issues on appeal requires that we interpret the relevant statutory provisions. "When interpreting statutes, a court's primary goal is to determine and give meaning to the Legislature's intent." *In re Nale Estate*, 290 Mich App 704, 706-707; 803 NW2d 907 (2010) (citations omitted). "[C]ourts must first examine the language of the statute. If the intent of the Legislature is clearly expressed by the language, no further construction is warranted." *Dressel v Ameribank*, 468 Mich 557, 562; 664 NW2d 151 (2003). "In construing a statute, the statutory provisions must be read in the context of the entire statute in order to produce a harmonious whole; courts must avoid a construction that would render statutory language nugatory." *People v McLaughlin*, 258 Mich App 635, 673; 672 NW2d 850 (2003).

## III. GOVERNING LAW

MCL 700.2803, "sometimes referred to as a 'slayer rule'" is part of the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq*., and "is derived from the common-law rules that one who commits a murder cannot benefit by his or her criminal act and that no devisee can take under the will of a testator whose death has been caused by the criminal act of the devisee." *In re Nale Estate*, 290 Mich App at 707-708. At the time the probate court applied the statute in this case, MCL 700.2803 provided in relevant part as follows:

(1) An individual who feloniously and intentionally kills or who is convicted of committing abuse, neglect, or exploitation with respect to the decedent forfeits all benefits under this article with respect to the decedent's estate. . . .

(2) The felonious and intentional killing or the conviction of the felon for the abuse, neglect, or exploitation of the decedent does all of the following:

(a) Revokes all of the following that are revocable:

(*i*) Disposition or appointment of property made by the decedent to the killer or felon in a governing instrument.

* * *

(5) A killer's or felon's wrongful acquisition of property or interest not covered by this section *shall* be treated in accordance with the principle that a killer or felon cannot profit from his or her wrong.

(6) After all right to appeal has been exhausted, a judgment of conviction establishing criminal accountability for the felonious and intentional killing or the abuse, neglect, or exploitation of the decedent conclusively establishes the convicted individual as the decedent's killer or as a felon, as applicable, for purposes of this section. *With respect to a claim of felonious and intentional killing, in the absence of a conviction, the court, upon the petition of an interested person, shall determine whether, under the preponderance of evidence standard,*

*the individual would be found criminally accountable for the felonious and intentional killing of the decedent.* If the court determines that, under that standard, the individual would be found criminally accountable for the felonious and intentional killing of the decedent, the determination conclusively establishes the individual as the decedent's killer for purposes of this section. (Emphasis added.)

Reading the language of this statute as a whole indicates that subsections (1) and (6) operate together. Specifically, subsection (1) of the statue provides that an individual forfeits all benefits under EPIC when he or she "feloniously and intentionally kills" the decedent. Importantly, however, subsection 1 does not require that an individual be *convicted* of feloniously and intentionally killing an individual to fall within the purview of the statute. Instead, subsection (6) provides two methods to establish that an individual "feloniously and intentionally" killed the decedent. First, subsection (6) provides that "a judgment of conviction establishing criminal accountability for the felonious and intentional killing . . . conclusively establishes the convicted individual as the decedent's killer." This means that when there is a conviction establishing a felonious and intentional killing, that judgement is conclusive and no further fact finding is required.

Subsection (6) provides the second means of establishing criminal accountability as follows:

With respect to a claim of felonious and intentional killing, *in the absence of a conviction*, the court, upon the petition of an interested person, shall determine whether, under the preponderance of evidence standard, the individual would be found criminally accountable for the felonious and intentional killing of the decedent. [Emphasis added.]

The phrase "*in the absence of a conviction*" clearly indicates that when there is no conviction establishing that a person intentionally and feloniously killed the decedent, the probate court may, upon petition, nevertheless make a separate independent determination as to whether the individual feloniously and intentionally killed the decedent. This remains operative even in the event where a person, such as respondent in this case, was convicted of a lesser-included offense in relation to his or her conduct involving the decedent. Indeed, there is nothing in the language of subsection (6) that bars the probate court from making a finding regarding criminal accountability in the event that a person was convicted of a lesser-included non-intent offense such as involuntary manslaughter. Thus, in this case, although respondent was convicted of involuntary manslaughter and second-degree arson, and even though respondent's convictions did not conclusively establish an intentional and felonious killing, the probate court nevertheless could proceed to determine criminal accountability under the preponderance of the evidence standard.

Our reading of the statute is supported by reading the statutory text as a whole. Specifically, the Legislature provided that the probate court could find criminal accountability using a preponderance of the evidence standard, which requires a lesser standard of proof as compared to the burden in a criminal case, where guilt must be established beyond a reasonable doubt. See *People v Green*, 310 Mich App 249, 255; 871 NW2d 888 (2015) (in a criminal

proceeding, a prosecutor must prove every element of a crime beyond a reasonable doubt). By directing the probate court to use the preponderance of the evidence standard, the Legislature clearly contemplated that, while there may not be sufficient evidence to sustain a conviction in a criminal proceeding, there may nevertheless be sufficient proof by a preponderance of the evidence that an individual intentionally and feloniously killed the decedent. In such cases, the Legislature intended that an individual forfeit all benefits under EPIC.

In addition, the language of subsection (5) supports a broad interpretation of subsection (6). Subsection (5) provides that "[a] killer's *or* felon's wrongful acquisition of property or interest not covered by this section *shall be treated in accordance with the principle that a killer or felon cannot profit from his or her wrong*" (emphasis added). This language illustrates that the principle underlying MCL 700.2803 as a whole is that "a killer *or* felon" should not profit from his or her wrongdoing. Thus, our reading of subsection (6) aligns subsection (5) and with the purpose of the statute as a whole in that it prevents an individual from profiting from his or her wrongdoing when a preponderance of the evidence supports that the individual feloniously and intentionally killed the decedent—irrespective of whether that individual was convicted of a lesser-included offense such as involuntary manslaughter.

## IV. APPLICATION

In this case, respondent was convicted of involuntary manslaughter and second-degree arson. The elements of these crimes do not require proof of intent to kill. See e.g. *People v Gillis*, 474 Mich 105, 138; 712 NW2d 419 (2006) (involuntary manslaughter is the unintentional killing of another "committed with a lesser mens rea of gross negligence or an intent to injure, and not malice"); MCL 750.73 ("a person who willfully or maliciously burns, damages, or destroys by fire or explosive a dwelling, regardless of whether it is occupied, unoccupied, or vacant at the time of the fire or explosion, or its contents, is guilty of second degree arson."). However, although there was no judgment of conviction conclusively establishing that respondent feloniously and intentionally killed the decedent, the probate court was not precluded from making factual findings independent of respondent's conviction.

Respondent argues that the probate court erred in finding that he feloniously and intentionally killed the decedent. Having reviewed the record, however, we cannot conclude that the probate court clearly erred in reaching this conclusion. *Krol*, 256 Mich App at 512.

The record indicates that at the preliminary examination, Matthew Bainter testified that he lived across the street from the decedent and respondent. Bainter explained that on the evening of May 23, 2014, he went over to the decedent's house and drank beer with the decedent and respondent. After a couple hours, respondent became upset when neither Bainter nor the decedent would go to the store to purchase more beer. Respondent went into the basement and was "ranting." Bainter testified that the decedent asked him to talk with respondent and Bainter went into the basement on four separate occasions to try and get respondent to come back upstairs. Respondent refused and was "ranting," throwing objects, and was angry. Bainter explained that respondent attempted to attach a nozzle on a propane tank and respondent stated that he was "going to burn his mother's face off." Respondent could not attach the nozzle so he started striking the propane tank onto the cement floor. Bainter tried to get respondent to stop, but respondent refused and continued to strike the propane tank on the floor. At that point,

Bainter went upstairs and then heard and felt an explosion that "threw" him and the decedent into the living room. Bainter ultimately went outside and saw flames emanating from the basement and he could not convince the decedent to come outside with him. A fire investigator testified that the fire was caused by a propane tank that leaked and contacted a spark or a flame. The investigator testified that when he arrived at the scene, a deceased female was found at the bottom of the basement stairway. The autopsy listed the cause of death as a homicide.

In addition to the preliminary examination testimony, at a plea hearing, respondent admitted to the court that he lit a cigarette when he went into the basement. The probate court considered the preliminary examination testimony, considered the plea, and considered the death certificate. Given this record, the probate court could have concluded that a preponderance of the evidence supported that respondent intentionally and feloniously killed the decedent. *Id*.

Respondent argues that the probate court applied the wrong standard and never found that he "intentionally" killed the decedent. However, while the court's opinion and order was somewhat muddled and the court often repeated that respondent was "criminally accountable," a review of the opinion and order indicates that the court was aware of the appropriate standard and applied that standard. Specifically, the court indicated that this case involved a claim of "felonious and intentional killing of the decedent," and that, based on the evidence, "it is clear that [respondent] would be held criminally accountable *for the felonious and intentional killing* under the preponderance of the evidence standard," and that respondent was criminally accountable "for the 'felonious and intentional killing' of his mother." Accordingly, the court applied the correct standard under MCL 700.2803(6) in finding that respondent feloniously and intentionally killed the decedent.

Finally, respondent cites the sentencing court's statements in his criminal case wherein the court stated, in part, that "I have no doubt that you didn't with premeditation or intent engage in the act that led to the unfortunate death of your mother. I just don't believe that you did." However, even if the sentencing court arrived at a different conclusion than the probate court, on appeal, our task is to determine whether the probate court's factual findings leave us with a definite and firm conviction that a mistake has been made. *Krol*, 256 Mich App at 512. We are not left with such a conviction and cannot conclude that the probate court's findings were clearly erroneous.[3] *Id*.

Affirmed. No costs awarded. MCR 7.219(A).

/s/ Michael J. Talbot
/s/ Stephen L. Borrello
/s/ Michael J. Riordan

---

[3] Given our holding that the probate court did not clearly err with respect to its findings under MCL 700.2803(6), we need not address whether the probate court erred when indicated that MCL 700.2803(5) formed a separate independent grounds on which to disinherit respondent under the statute.