*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* DONALD F. CLARK TRUST.

RENE L. HOFACER,

      Appellant,

v

DAVID H. COOK, Trustee of the DONALD F. CLARK TRUST, and MICHAEL MOONEY,

      Appellees.

UNPUBLISHED
January 16, 2025
3:29 PM

No. 366592
Iosco Probate Court
LC No. 18-003656-TV

Before: PATEL, P.J., and MURRAY and YATES, JJ.

PER CURIAM.

Respondent-appellant, Rene L. Hofacer, appeals by right the probate court's order removing the trustee and closing the probate file regarding the Donald F. Clark Trust (the Trust); granting disbursements from the Trust for certain attorney fees; and denying other disbursements from the Trust to Hofacer and her attorney.[1] We affirm.

## I. BACKGROUND

This is the third time this case is before this Court. In the first appeal, we discussed much of the pertinent the factual and procedural background:

On November 29, 2017, Donald F. Clark [Clark] created a noncharitable, irrevocable trust [the Trust] to provide for the benefit and welfare of himself and his wife, appellant Elaine D. Clark. The trust named [Michael Mooney] as trustee

---

[1] Although listed as a party on appeal, trustee Cook has not participated in the appellate proceedings.

-1-

and provided that he would have the sole discretion to distribute any trust income or principal to the beneficiaries. Elaine was the primary beneficiary, and upon her death, her son, appellant Donald L. Clark, would become the sole beneficiary. On Donald L. Clark's death, if the trust had not been completely distributed, the remainder would be distributed to [Mooney]. [Clark] died on December 9, 2017. On March 22, 2018, the probate court removed [Mooney] from his position as trustee to avoid a conflict of interest. On August 2, 2018, [Elaine and Donald L. Clark] filed a petition to terminate the trust and did not serve [Mooney] notice. [*In re Donald F Clark Trust*, unpublished per curiam opinion of the Court of Appeals, issued February 20, 2020 (Docket No. 346539), p 1.]

The probate court ruled that Mooney was an interested party and had the right to object to the termination of the Trust. *Id*. at 1. This Court upheld this ruling on appeal. *Id*. at 4.

In the second appeal, Elaine challenged the probate court's denial of her motion for summary disposition under MCR 2.116(C)(10) and her petitions to return real property and bank account funds:

During the decedent's life and after the Trust's creation, funds from two jointly held PNC bank accounts were transferred into the Trust. Additionally, [Elaine] met with the decedent's lawyer, Robert Myles, and signed deeds transferring real property into the Trust. [Elaine] disputes these transfers and filed petitions to have the funds and property returned to her, arguing that she did not understand what she was doing when she transferred the real property and that [Mooney] improperly transferred the PNC accounts for his own benefit.

[Elaine] moved for summary disposition under MCR 2.116(C)(10) only as it related to the PNC accounts. However, the probate court denied the motion, finding that there was a genuine issue of material fact regarding whether the decedent desired that the the [sic] funds to pass to [Elaine] upon his death or whether he desired for those funds to be placed within the Trust and paid out to [Elaine] to care for her after his death. Additionally, after an evidentiary hearing held on the same day, the trial court found that [Elaine] had failed to show that the transfers—of real property and the funds in the PNC accounts—should be voided, so it denied the petition to return real property and the petition to return the funds from the PNC accounts. [*In re Donald F Clark Trust*, unpublished per curiam opinion of the Court of Appeals, issued January 20, 2022 (Docket No. 355300), pp 1-2].

This Court upheld the probate court's denial of the motion for summary disposition and the petitions. *Id*. at 1.

This appeal involves the probate court's winddown of the Trust after Elaine's passing. The Trust was created by Clark to take care of Elaine and their son, Donald L. Clark (Donnie), after Clark's passing. For purposes of this appeal, the portions of the Trust involving Elaine are most pertinent. The Trust stated that, upon Clark's death, the Trust would become "for the sole benefit"

of Elaine "during her lifetime." The Trust gave the trustee broad discretion on how to manage and disburse Trust assets. Paragraph 5.1 of the Trust provided:

> The trustee may pay to or apply for the benefit of Elaine such amount or amounts or none of the net income and principal of the trust from time to time as the trustee, in its sole discretion, determines to be reasonable and advisable under the circumstances, taking into consideration Elaine's potential needs, best interests, and welfare. Any income not so distributed shall be accumulated and added to principal of the trust. The trustee shall have full and complete discretion as to whether any such payments shall be made hereunder, the purpose of such payments, and the amounts thereof. The trustee shall have full and complete discretion as to whether distributions are made directly to Elaine or to third-party vendors for the benefit of Elaine. Neither Elaine nor any representative or creditor of Elaine shall have the right to compel the making of any distributions and all such distributions, if any, shall be in the complete control of the trustee. The trustee has the right, for example, to make substantial distributions, or, alternatively, to make no distributions whatsoever, all as determined in the sole discretion of the trustee.

Paragraph 5.2 of the Trust provided:

> In exercising the discretionary powers under Article 5.1, the trustee shall be guided by my following statement of purposes and intentions: I am concerned about Elaine's ability to handle financial affairs due to various circumstances. This trust has been designed to provide maximum flexibility in the trustee to provide financial assistance to Elaine during her lifetime, while at the same time protecting trust assets from the reach of her creditors and others. In making discretionary distributions, the trustee shall have discretion to consider all of the facts and circumstances that I would reasonably have considered if I were then living, including the nature and size of the trust estate, the particular situations of Elaine in her personal life, other income and assets available to Elaine, and any other factor the trustee determines to be pertinent to the exercise of its discretion. I desire the trustee to exercise the discretionary powers in such a way as to provide flexibility in the administration of the trust, under conditions from time to time existing, in the best interest of Elaine and any such discretionary determination shall be binding on all interested persons.

After Clark passed in December 2017, the Trust became for Elaine's sole benefit. Donnie passed away on July 20, 2021, which left Elaine as the only remaining beneficiary and Mooney holding the remainder of the interest in the Trust in the event Elaine passed away before the Trust was fully exhausted. It appears that Hofacer, Elaine's niece, became the holder of Elaine's durable power of attorney in August 2021. The trustee and Hofacer subsequently negotiated a monthly allowance of $4,500 beginning on December 1, 2021, to provide for expenses associated with in-home care for Elaine.

In May 2022, the trustee moved to approve disbursements from the Trust. The trustee requested that the monthly allowance be increased to $7,500 because Elaine's health had deteriorated to the point that she required 24-hour in-home care. The trustee also requested that

$25,000 be paid toward Elaine's delinquent account with Plunkett and Cooney for their services provided to Elaine in appellate proceedings. The trustee further requested that $11,000 be paid to Robert Myles for drafting the Trust for Clark. Additionally, the trustee sought to disburse certain amounts to Mooney for his attorney's fees. Multiple objections followed. Mooney objected to the disbursements to Plunkett and Cooney and requested that the disbursements for his attorney's fees be increased. Plunkett and Cooney as well as Elaine objected to any disbursements to Mooney. And Hofacer requested that the monthly allowance be increased to $9,200 because one of Elaine's care providers needed to be replaced. None of the parties opposed disbursements to Myles, and Hofacer did not oppose disbursements to Plunkett and Cooney. The probate court permitted the increase in Elaine's monthly allowance but reserved its judgment on any disbursements for the attorney payments.

Elaine passed away on December 27, 2022. Shortly after, Mooney petitioned to remove the trustee and close the probate file. Mooney maintained that he was the only remaining Trust beneficiary and there were no outstanding issues regarding the Trust or Trust property. Hofacer opposed the petition, arguing that there were still outstanding issues involving the Trust. Pertinent to this appeal, Hofacer sought approximately $46,000 for her services provided to Elaine as the holder of Elaine's durable power of attorney, and Hofacer's counsel sought payment of approximately $2,800 for her representation of Hofacer. Additionally, Hofacer argued that the Trust still needed supervision because, in a separate criminal proceeding, Mooney had been charged for solicitation of Elaine's murder. Hofacer later requested that Elaine's estate be reimbursed for $160,000, which represented the amount that would have been paid if Elaine had received the $4,500 monthly allowance at the outset of Clark's death.[2] Hofacer also clarified that she believed Michigan's "slayer statute" could apply to Mooney's charges for solicitation of murder and that the probate court should make the requisite statutory determinations.[3]

At the preliminary examination for Mooney's separate criminal proceeding,[4] Daniel Michael Blackhawk testified regarding two alleged phone conversations that he had with Mooney. Blackhawk claimed to be Clark's illegitimate son, and Blackhawk claimed that Clark had wanted Blackhawk to have an inheritance. Blackhawk testified that, in two phone conversations with Mooney, Mooney attempted to solicit Blackhawk's help in killing Elaine and Donnie in exchange for helping Blackhawk obtain his inheritance. Blackhawk contacted police. The district court found that there was probable cause, and it bound Mooney over on two counts of solicitation of murder. There is no dispute in this case that Elaine and Donnie both died of natural causes and

---

[2] The full amount was $207,000, but the Trust had paid Elaine $47,000 during that period. Therefore, Hofacer subtracted this $47,000 from the full $207,000 to arrive at the $160,000 number.

[3] MCL 700.2803 of the Estates and Protective Individuals Code (EPIC), MCL 700.1101 *et seq*., is commonly referred to as the "slayer statute" or "slayer rule." *In re Nale Estate*, 290 Mich App 704, 705, 707; 803 NW2d 907 (2010). This statute generally "provides that a devisee who 'feloniously and intentionally' kills a decedent forfeits all benefits from the decedent's estate." *Id*. at 707.

[4] The preliminary examination transcript was filed with the probate court.

that the charges against Mooney were subsequently dismissed because Blackhawk himself passed away.

Mooney opposed Hofacer's attempt to apply the slayer statute to the dismissed charges of solicitation of murder. He argued that the statute did not apply because there was no actual killing nor was there abuse, neglect, or exploitation of a decedent. Mooney also opposed payments to Hofacer or her counsel, arguing that the Trust had never contracted with either individual beyond the monthly allowances paid to Elaine for her care. Mooney asserted that the trustee had broad discretion in how to care for Elaine and a duty to protect the Trust from Elaine's creditors. The trustee made it clear multiple times on the record that he never hired Hofacer or her attorney on behalf of the Trust.

The probate court granted the petition to remove the trustee and close out the probate file. The probate court ordered the trustee to pay both Myles for creation of the Trust and Plunkett and Cooney for their prior representation. The probate court reasoned that no party had opposed Myles's payment and that the trustee had supported payment to Plunkett and Cooney. However, the court denied any payments to Hofacer and her attorney. The probate court stated that the trustee had maintained frequent contact with Elaine and that, when Elaine's health began to deteriorate, the trustee had correspondingly increased payments to Elaine. The probate court further stated that Hofacer and her attorney's claims were both prohibited because they were made after Elaine's death. Finally, the probate court declined to apply the slayer statute, reasoning that there were no allegations of "foul play" associated with the deaths of Elaine and Donnie and there was no conviction regarding the abuse, neglect, or exploitation of Elaine or Donnie.

Hofacer moved for reconsideration, arguing that she and her attorney's claims were permitted to be made within four months of Elaine's death and that this timeline was indisputably met. Additionally, Hofacer summarily contended that the probate court had erred both by declining to order the Trust to pay the $160,000 and by choosing not to apply the slayer statute. Finally, for the first time, Hofacer asserted a vague indication of gender discrimination. Hofacer implied that the probate court's decision to grant the fees to the male attorneys while denying the fees of Hofacer and her counsel, who were female, evidenced "apparent[] gender-related rulings."[5] The probate court summarily denied the motion for reconsideration for the reasons stated in its original decision. This appeal followed.

## II. GENDER DISCRIMINATION

Hofacer argues that the probate court discriminated against her and her female counsel based on their gender by denying the professional fee claims of herself and her female counsel while granting fees to the male attorneys and the male trustee. We disagree.

Hofacer first raised this issue in her motion for reconsideration. An issue raised for the first time in a motion for reconsideration is unpreserved for appellate review. *George v Allstate Ins Co*, 329 Mich App 448, 454; 942 NW2d 628 (2019). "In civil cases, Michigan follows the

---

[5] Hofacer primarily asserted instances of judicial impropriety, but she does not raise such arguments on appeal.

'raise or waive' rule of appellate review." *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 289; ___ NW3d ___ (2023) (cleaned up). Because this issue was not preserved, it is waived and we are not obligated to consider it. *Id*. "However, this Court may overlook preservation requirements if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented." *Id*. at 289-290. Our Supreme Court has cautioned that this discretion should be exercised sparingly and only in exceptional circumstances. *Napier v Jacobs*, 429 Mich 222, 233-234, 414 NW2d 862 (1987).

Additionally, Hofacer broadly refers to the Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq*., but fails to provide any legal rules or principles or analysis to support her argument. Thus, even if her discrimination claim was not waived, it is abandoned. See *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959) ("It is not enough for an appellant in [her] brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for [her] claims, or unravel and elaborate for [her] [her] arguments, and then search for authority either to sustain or reject [her] position."). Because no exception warrants considering Hofacer's unpreserved and abandoned discrimination argument, we decline to address it. See *Tolas Oil & Gas Exploration*, 347 Mich App at 289-290.

Alternatively, Hofacer attempts to argue that, even if there was no discrimination, the fees still should have been granted to Hofacer's counsel. However, apart from a single, conclusory sentence, Hofacer fails to develop this alternative argument and thus has abandoned it. See *Mitcham*, 355 Mich at 203. Hofacer also raises an argument regarding MCL 700.7610 for the first time on appeal in her reply brief on appeal. Reply briefs may contain only rebuttal argument. MCR 7.212(G); see also *Bronson Methodist Hosp v Mich Assigned Claims Facility*, 298 Mich App 192, 199; 826 NW2d 197 (2012). "Raising an issue for the first time in a reply brief is not sufficient to present the issue for appeal." *Bronson Methodist Hosp*, 298 Mich App at 199 (cleaned up).

## B. SLAYER STATUTE

Hofacer argues that the probate court erred by not applying the slayer statute to preclude the transfer of the Trust's assets to Mooney. We disagree.

Generally, "an appeal from a probate court decision is on the record, not de novo," but this Court reviews de novo the probate court's interpretation and application of a statute. *In re Nale Estate*, 290 Mich App 704, 705, 706; 803 NW2d 907 (2010). Given that this issue turns on the interpretation of a statute, the principles of statutory interpretation and construction are applicable. "The principal goal of statutory interpretation is to give effect to the Legislature's intent, and the most reliable evidence of that intent is the plain language of the statute." *South Dearborn Environmental Improvement Ass'n, Inc v Dep't of Environmental Quality*, 502 Mich 349, 360-361; 917 NW2d 603 (2018). "We accord to every word or phrase of a statute its plain and ordinary meaning, unless a term has a special, technical meaning or is defined in the statute." *Guardian Environmental Servs, Inc v Bureau of Const Codes and Fire Safety*, 279 Mich App 1, 6; 755 NW2d 556 (2008). "Where the statutory language is unambiguous, the plain meaning reflects the Legislature's intent and the statute must be applied as written." *Honigman Miller Schwartz & Cohn LLP v City of Detroit*, 505 Mich 284, 294; 952 NW2d 358 (2020) (cleaned up). If a statutory

term is undefined, it "must be accorded its plain and ordinary meaning[;]" but a legal term of art "must be construed in accordance with its peculiar and appropriate legal meaning." *Brackett v Focus Hope, Inc*, 482 Mich 269, 276; 753 NW2d 207 (2008), citing MCL 8.3a.

The slayer statute, contained within MCL 700.2803, "is derived from the common-law rules that one who commits a murder cannot benefit by his or her criminal act and that no devisee can take under the will of a testator whose death has been caused by the criminal act of the devisee." *In re Nale Estate*, 290 Mich App at 707-708. The statute "provides that a devisee who 'feloniously and intentionally' kills a decedent forfeits all benefits from the decedent's estate[,]" *id*. at 707, and states in pertinent part:

(1) An individual who *feloniously and intentionally kills or who is convicted of committing abuse, neglect, or exploitation with respect to the decedent* forfeits all benefits under this article with respect to the decedent's estate, including an intestate share, an elective share, an omitted spouse's or child's share, a homestead allowance, a family allowance, and exempt property. If the decedent died intestate, the decedent's intestate estate passes as if the killer or felon disclaimed his or her intestate share.

(2) The felonious and intentional killing of the decedent does all of the following:

(a) Revokes all of the following that are revocable:

(*i*) Disposition or appointment of property made by the decedent to the killer in a governing instrument.

* * *

(5) A killer's or felon's wrongful acquisition of property or interest not covered by this section must be treated in accordance with the principle that a killer or felon cannot profit from his or her wrong.

(6) . . . With respect to a claim of felonious and intentional killing, in the absence of a conviction, the court, on the petition of an interested person, shall determine whether, under the preponderance of evidence standard, the individual would be found criminally accountable for the felonious and intentional killing of the decedent. If the court determines that, under that standard, the individual would be found criminally accountable for the felonious and intentional killing of the decedent, the determination conclusively establishes the individual as the decedent's killer for purposes of this section. [MCL 700.2803 (emphasis added).]

The language in MCL 700.2803(1) is plain and unambiguous. Two actions trigger the statute's application: (1) a felonious and intentional killing, or (2) a conviction of abuse, neglect, or exploitation of the decedent. It is undisputed that neither has occurred in the present case. It is undisputed that Elaine and Donnie died of natural causes and thus there was no felonious or intentional killing. And although Mooney was bound over on two charges of *solicitation* of murder, the charges were dismissed. Mooney was not convicted of abuse, neglect, or exploitation of Elaine or Donnie. Therefore, the slayer statute does not apply.

Hofacer argues that MCL 700.2803(5) "opens the door to situations not specifically delineated within the contours of [subsection] (1)[,]" and asserts "[a]n individual who feloniously and intentionally kills" is broadly defined in MCL 700.2803(6) to include a person who is found criminally accountable for the felonious and intentional killing, and applies to a co-conspirator. We disagree. The plain and unambiguous language of subsection (5) refers to "a killer or felon."[6] Mooney is neither. And the relevant language of subsection (6) clearly states that it applies "to a claim of felonious and intentional killing," which indisputably did not occur in the present case. We decline to read language into the statute that is not present and expand the statute beyond its plain language.

## C. TRUSTEE'S DUTIES

Lastly, Hofacer argues that the trustee was required to pay the $4,500 monthly allowance from the outset of Clark's death. Since this did not occur, Hofacer contends that Elaine's estate was entitled to the $160,000 in missing payments. We disagree.

This Court "review[s] for clear error a probate court's factual findings in cases in which the court conducted proceedings without a jury." *In re Conservatorship of Murray*, 336 Mich App 234, 239; 970 NW2d 372 (2021). Clear error occurs "when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." *Id*. at 239-240 (cleaned up). This Court reviews for an abuse of discretion the probate court's dispositional rulings. *In re Temple Marital Trust*, 278 Mich App 122, 128; 748 NW2d 265 (2008). An abuse of discretion occurs when the probate court "chooses an outcome outside the range of reasonable and principled outcomes." *Id*. Finally, this Court reviews de novo both the interpretation and application of a statute, *id*., as well as the interpretation of a trust document, *Bill & Dena Brown Trust v Garcia*, 312 Mich App 684, 693; 880 NW2d 269 (2015).

When interpreting a trust, this Court "must ascertain and give effect to the settlor's intent when resolving a dispute concerning the meaning of a trust," and this intent is determined "by looking to the words of the trust itself." *Id*. at 693 (cleaned up). This Court "must enforce the plain and unambiguous terms of a trust as they are written." *Id*. at 694. Only if the trust's terms are ambiguous may a court look outside the document and consider the circumstances of the trust's creation. See *id*. at 693. Similar to statutory interpretation, this Court "must also read a trust as a whole, harmonizing its terms with the intent expressed, if possible." *Id*. at 694.

The language of the Trust supports the conclusion that it was a discretionary trust. Under a discretionary trust, "the trustee may pay to the beneficiary as much of the income or principal as the trustee in his discretion determines to be appropriate." *In re Johannes Trust*, 191 Mich App 514, 517; 479 NW2d 25 (1991). Paragraph 5.1, entitled "Income and Principal," provided the trustee with broad discretion to make disbursements from the Trust for Elaine's benefit. It gave the trustee discretion as to how much to provide, including none at all. Perhaps most importantly, it protected the Trust from making any distributions to creditors, and even Elaine's own

---

[6] MCL 700.2802(c) explicitly defines a felon to be "the individual who was convicted of committing the abuse, neglect, or exploitation."

representatives, without the agreement of the trustee. Paragraph 5.2, entitled "Intentions," provides insight into Clark's intent in creating the Trust. Clark was concerned about Elaine's ability to handle her financial affairs. Notably, the Trust specifically mentioned protecting the Trust from Elaine's "creditors and others." This language, along with the use of the phrase "maximum flexibility," suggests that the intent behind the Trust was to provide the trustee with a large amount of discretion in caring for Elaine while protecting the Trust from outsiders who may take advantage of Elaine. When a trust is discretionary, "the beneficiary has no right to a disbursement from the trust other than what the trustee in his sole discretion chooses to distribute, the beneficiary's creditors cannot compel the trustee to pay any part of the income or principal in order that the creditors may be paid." *Johannes Trust*, 191 Mich App at 517.

Hofacer points to no provision in the Trust requiring that Elaine be paid $4,500 from the outset. Hofacer also fails to demonstrate that such an allowance was necessary immediately upon Clark's death. In the probate court proceedings, the trustee stated that he had regularly met with Elaine and paid her what the trustee determined she needed; that he had continually reviewed requests for Elaine's living expenses; that he had paid property taxes on Elaine's real property; and that he had paid for repairs for this real property. Similarly, Mooney's counsel stated that the trustee had regularly met with both Elaine and Donnie and assisted Elaine with her living expenses. Hofacer offers no citation to the record to rebut this. Her own accounting shows that the majority of her time was spent caring for Elaine's day-to-day needs and handling outside matters. There is no indication that Hofacer was dissatisfied with Elaine's living conditions or the trustee's duties, or that a monthly allowance was needed from the outset. Although there are a few entries concerning general repairs, none of the entries reflect that Elaine's residence was unsafe or in dire need of repairs as Hofacer contends on appeal. Furthermore, Hofacer acknowledged that the Trust was not Elaine's only means of support. Elaine had multiple bank accounts, a retirement account, and real property. The record does not support Hofacer's contention that the trustee was derelict in his duties in caring for Elaine.

Affirmed.

/s/ Sima G. Patel
/s/ Christopher M. Murray
/s/ Christopher P. Yates

-9-